ECKLES & BROWN vs. BATES.

26  655
143  264

1. The declarations of a slave, made while sick to a physician or any other person, relative to the symptoms and nature of the disease under which he is laboring, are admissible evidence upon the principle of *res gestæ*, as well as from the necessity of the case.

2. The slave's declarations, also, as to his symptoms and condition during previous similar attacks, upon which the physician in part relies in forming his opinion as to the duration and character of the disease, are competent evi-

dence on the same principle, as furnishing the basis in part of that opinion, but for no other purpose.

3. But the slave's declarations to other persons not skilled in the science of medicine, as to his previous attacks, the medicines which he then took, and his opinion that those attacks were similar to his present sickness, are not admissible evidence.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN GILL SHORTER.

COVENANT by George M. Bates against Eckles & Brown, to recover damages for the breach of a warranty of soundness, contained in a sealed bill of sale of a slave named Toney, sold by defendants to plaintiff in January, 1851.

On the trial, as defendants' bill of exceptions discloses, a great number of exceptions were saved to the rulings of the court in the admission and exclusion of evidence on the question of the slave's unsoundness; but of these it is only necessary to state such as are decided by this court. The plaintiff first read in evidence the bill of sale containing the warranty of soundness, and then offered the deposition of Doct. Peterson, who testified, that he had been called to see the slave professionally by the plaintiff, and had visited him afterwards during his sickness, and had made a *post-mortem* examination of his body. This witness described with great particularity the symptoms and character of the disease, and in his answer to the fifth interrogatory by plaintiff, among other things, used this language: "*In conversation with the negro, I learned from him, though he made the statement with extreme reluctance, that he had been subject to similar attacks before, and had been very ill from one such attack years previous.* I omitted to give these statements in my answer as to the facts which determined my treatment of the disease. * * * *From the statement of the negro, and the symptoms of the disease, together with the post-mortem examination, my medical opinion is, that the negro had been unsound for years.*" The defendants moved to exclude from the jury, "as illegal and irrelevant," those portions of the above answer which are italicized; but the court overruled each motion, and the defendants excepted.

The plaintiffs offered in evidence, also, the depositions of Mrs. Mary Treadwell and Miss Sarah Stevens, taken on in-

terrogatories, to the third and fourth of which, before crossing them, the defendants objected, "on the ground that the testimony sought to be obtained by them is illegal and irrelevant." These interrogatories, with the answers thereto, were as follows :

"3. Did you ever hear said slave, when sick and suffering under disease, in reply to inquiries as to the complaint under which he was suffering, speak of said complaint, and of its symptoms, and of the length of time during which he had suffered under said complaint? If so, state when this was, and where, and to whom such statements were made by said slave, and how said slave came to make them ; and then state all that he said in that connection, and the condition of the slave when he made them.

"4. Did you ever know said slave to complain of being sick? If so, state what he said as to his condition when making such complaints, and to whom this was said, and where."

Mrs. Treadwell answered these interrogatories as follows :

"Ans. to 3d int.—At a time when said slave was suffering under the illness of which he died, he made frequent suggestions as to the treatment to be used, which led to inquiries on my part whether he had ever before been afflicted in the same way. *He replied that he had been subject to similar attacks, and had generally been relieved by drinking soap-suds.* He was at that time laboring under severe pain in the stomach, and it was in the stomach that he complained of pain. This was on Saturday, a few hours after being attacked, and he died on the following Monday. *He opposed the use of the remedies which we had been applying, and insisted on the use of those which he had been in the habit of using; and the remedies which he suggested were used, and seemed to afford momentary relief.* The statements were made to Mrs. Bates and myself, at the residence of Mr. Bates in Barbour county. He was at that time suffering intensely, *and remarked, that he had been as bad off before with the same disease. In addition to drinking soap-suds, he said, he had also been benefited previously by being put in a barrel of warm water.*

"Ans. to 4th int.—At the time said statements were made, he appeared to be suffering in the stomach, and his conduct

42

and movements were such as to induce the belief that he was laboring under a severe attack of the colic. These were the complaints made by him at that time. This was the only time I ever knew him to complain, or be sick, although I had seen him before, but never had any conversation with him."

The answers of Miss Stevens were as follows :—

"Ans. to 3d int.—*I have heard said slave, when suffering under pain in the stomach, as he stated, and also as indicated in his action, say that he was suffering under such pain, and suggest the use of red pepper, which he usually carried in his pocket and used habitually. Such complaints and suggestions I have frequently heard him make; and he often asked for syrup, and said meat would hurt him.* His ordinary movements about the room were slow, and in a stooping attitude. I resided in the family of Mr. Bates, but was not at home when said slave was attacked with his last illness. I got home the day before his death, and he had then all the indications of severe pain in the stomach.

"Ans. to 4th int.—In my answer to the third direct interrogatory, I have stated all I know in answer to this."

The bill of exceptions states, that "there was no proof before the court that Mrs. Treadwell was in any manner medically informed as to the nature and character of diseases, and there was no proof that Miss Stevens was medically skilled." In addition to their general objections to the third and fourth interrogatories propounded to these witnesses, the defendants objected to specific portions of each ; also, to the entire answer to each interrogatory, and to such portions of each, separately, as are italicized. All of these objections the court overruled, and admitted all the evidence ; and to the ruling of the court on each separate objection the defendants excepted.

These rulings of the court are now assigned for error.

BELSER & BARRETT, for the appellant, cited the following cases : Thompson v. Mawhinney, 17 Ala. 366 ; Fairlie v. Hastings, 10 Vesey's R. 123 ; Parris v. Jenkins, 2 Rich. Law R. 106 ; Jones v. Nirdlinger, 20 Ala. 488 ; Stephens v. Chappell, 3 Strob. Law R. 80.

ELMORE & YANCEY, *contra*, cited and relied on Rowland v.

Walker, 18 Ala. 749 ; Turney v. Knox, 7 Mon. 88 ; Aveson v. Lord Kinnard, 6 East's R. 188.

CHILTON, C. J.—We fully recognize the doctrine, as asserted in Rowland v. Walker, 18 Ala. R. 749, that the declarations of a slave, made when sick, relative to the symptoms and nature of the disease *under which he is laboring*, whether made to a physician or other person, are admissible as original evidence. Such declarations are admissible as explanatory of the present condition of the slave, upon the principle of *res gestæ*, as well as upon the necessity of the case.

We are also of opinion, that what the slave said to the physician, both as respected his condition at the time he was called to see him, and his previous physical symptoms, on which the physician in part relied in forming his opinion as to the duration of the disease and its character, was properly received, as furnishing the basis in part for that opinion, but for no other purpose. If, in the judgment of a scientific physician, the previous condition of the slave was so described as to aid him, in connection with the other attendant circumstances, in forming a correct judgment as to the length of time the slave had been diseased, it is not for the court to exclude the opinion of the physician because he has availed himself of these declarations. That opinion goes to the jury, with the facts on which it is founded, for what it is worth. They, of course, will look to the data upon which it is predicated, and give it more or less weight as the circumstances may afford a sure or dubious test of the slave's previous condition. In this view, the declarations of the slave, describing his physical habitudes, his present and past sufferings, and the symptoms accompanying them, become part of the *res gestæ*, as they enable the physician, when considered in connection with his then apparent condition, to form a more correct idea of the character of his disease, and direct his inquiries and aid his investigation into its nature upon the *post-mortem* examination which was made.—Turney v. Knox, 7 Mon. 88.

But the declarations of the slave, as to his previous attacks and the medicine which he took, which are merely narrative of past events, not made to the physician as constituting any part of the foundation for a medical opinion, but to the

female witnesses who deposed in this case, and who are not skilled in the science of medicine, were improperly allowed to go to the jury. What the slave did and said, as explanatory of his condition at the time he was laboring under the disease, they might well depose to, as this constituted part of the *res gestæ;* but his previous attacks, and his opinion as to their similarity with that under which he was then laboring, constituted no part of the *res*, and could only be admitted in connection with, and as the foundation of, the opinion of a physician. Such declarations are not, therefore, legal evidence, when offered by themselves as original proof. Were such the law, it would be an easy matter to prove slaves unsound by their declarations of their unsoundness, oftentimes feigned as an excuse to avoid labor, or to procure a change of masters. They are incompetent to testify against a white person, and to permit their declarations to be made original proof, except as they constitute part of the *res gestæ*, or are made in connection with and as furnishing a basis for the opinion of physicians, would be to let in all the evils which their exclusion as witnesses was designed to avert.—See Lush v. McDaniel, 13 Iredell's Law R. 485.

The above principles will be easy of application to the proof in this cause upon another trial, and we need not, therefore, prolong this opinion by a specific application of them.

Let the judgment be reversed, and the cause remanded.

RICE, J., having been of counsel, did not sit in this case.