23332, 23403. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK *v.* DAVIS; and *vice versa.*

DECIDED FEBRUARY 24, 1934.

*Lawton & Cunningham, Wilcox, Connell & Wilcox, J. B. Odum*, for plaintiff in error.

*Ryals, Anderson & Anderson, Franklin & Langdale, H. C. Ever-hardt,* contra.

PER CURIAM. We consider it necessary to elaborate upon the second headnote only. The plaintiff brought suit upon a policy of life insurance (in which she was named as beneficiary) issued to her husband. The policy was for the sum of $2500, but it contained the following provision: "If there further be received at said home office due proof that such death resulted directly from bodily injury received after the date of issue of this policy, independently and exclusively of all other causes, and that such bodily injury was effected solely through external, violent, and accidental means, and that such death occurred within sixty days after the date of such bodily injury, [the insurer] promises to pay to said beneficiary, instead of the face amount of this policy, five thousand dollars (double the face amount of this policy, herein called double indemnity); provided, however, that this double indemnity shall not be payable . . if such death resulted, directly or indirectly, from bodily or mental infirmity or disease of any sort." In due time after the death of the insured the company paid to the beneficiary the sum due under the face amount ($2500) of the policy, without prejudice to her claim for double indemnity, and without prejudice to the right of the company to dispute the claim.

On the trial the plaintiff introduced considerable circumstantial evidence tending to show that the insured, a few days before his death, received a bodily injury in an automobile accident which aggravated a hernia from which he had suffered for several years. In view of the allegations of the petition and the provisions of the policy of insurance, the burden was on the plaintiff to show by a preponderance of the evidence that her husband had the automobile accident, that he was injured bodily therein, and that his death resulted directly, and independently of all other causes, from that injury.

From the evidence it appeared that there was no eye-witness to the alleged automobile accident. In addition to the circumstantial evidence the plaintiff introduced as a witness Dr. Griffin, the physician of the insured, who testified that when he examined the insured on the day after the alleged accident, the insured "said he had a shake-up in a Ford car." The defendant objected to this testimony, upon the following grounds: (a) "that any statement

that might have been made to the witness by the insured with reference to what happened to him on the previous day would be hearsay;" (b) "that the statement made by the insured to the witness to the effect that he had been in a shake-up in a Ford car was a self-serving declaration;" (c) "that such statement, if made, was not a part of the res gestæ of the alleged automobile accident;" and (d) "that it did not appear that any officer, agent, or representative of the defendant was present when it was claimed that said statement was made to the witness, and the evidence offered was therefore not admissible to bind the defendant." The court overruled the objections and admitted the evidence, and to this ruling the defendant excepted in its motion for a new trial.

Since this is an action for double indemnity on an insurance policy because of death by accident, the fact of the happening of an accident is of vital importance in the case. The evidence discloses that the insured, a traveling salesman for the Rome Stove Works, of Rome, Georgia, left his home in Valdosta, Georgia, on a Monday morning to be gone until the following Saturday. He went first to Marianna, Florida, and from there he was to go to Dothan, Alabama. He was driving a model A Ford coupé which had been used some six or seven months. It was in good condition and unscarred when he left Valdosta. He returned to Valdosta on the next Thursday afternoon, and appeared to be suffering intensely, and was unable to carry his suitcase up the stairs at his house. His automobile had mud and dirt on its body, and its right front fender was bent. A witness testified, that on the 22d of April, which was a Wednesday, some three miles from Dothan, Alabama, he saw a comparatively new model A Ford coupé in the ditch beside the road, and two men helping another man into another car and driving off with him; that from an inspection of a photograph of the deceased he thought that it was the same man he saw being carried away on April 22; and that he found in the abandoned Ford coupé certain letters and pamphlets from a stove concern in Rome, Georgia, and directed to a man named Davis. The testimony of a clerk of the Hand Trading Company in Pelham, Georgia, that on the Thursday morning the deceased called on the company and seemed to be suffering greatly, and had to sit down on a stove while attempting to sell an order to the company, was admitted in evidence. While the court admitted the testimony of Dr. Griffin as to the statement

made to him by the insured, it instructed the jury in reference thereto as follows: "The judge further instructs you that the court has permitted Dr. Griffin to testify that when Davis, the insured, called on him on Thursday, April 25 [23 ?], 1931, he, the insured, stated to him that he had been shaken up in a Ford car, or words to that effect. The judge charges you that while you may consider that evidence for the purpose of explaining Dr. Griffin's conduct in examining the insured and advising an operation and performing the operation, it is not proof of the substantive fact that the insured had been in an automobile wreck, or that the injury, if any he sustained, resulted from a wreck. You would not consider that in determining whether or not there was a wreck and that the injuries, if any, from which the insured was suffering were the result of a wreck."

In view of the evidence introduced on the part of the plaintiff with reference to the accident, and the charge of the court, we can not see how this statement, if objectionable, was so injurious as to require a new trial. We think, however, that the statement was admissible as a matter of necessity, and to show the basis of the testimony or the reasons for the expert evidence of the doctor in reference to the cause of the death of the insured. It will be noted that all the cases cited by counsel for the plaintiff in error from the Georgia decisions can be distinguished from this case by reason of the fact that where a party himself is accessible to the court, any evidence as to his sayings which are not a part of the res gestæ are excluded because the witness himself may be produced to testify before the jury. A different rule has been applied where the witness whose hearsay statements it is sought to introduce is incompetent to testify or inaccessible to the court. "Hearsay evidence is that which does not derive its value solely from the credit of the witness, but rests mainly on the veracity and competency of other persons. ·The very nature of the evidence shows its weakness, and it is admitted only in specified cases from necessity." Civil Code (1910), § 5762. Hearsay evidence may become original evidence when admitted as a fact to explain conduct and ascertain motive. Civil Code (1910), § 5763. Prior to the act of 1866, now embodied in section 5858 of the Civil Code of 1910, a party could not testify in his own behalf. As was pointed out by Chief Justice Bleckley in the case of *Atlanta Street R. Co.* v. *Walker,* 93 *Ga.* 462

(21 S. E. 48), a wife was incompetent to testify as to complaints made to her by her husband as to his physical injuries and as to suffering therefrom, the plaintiff, her husband in that case being himself a witness. Prior to the act of 1866 the husband was incompetent, and such evidence was formerly admissible on the ground of necessity. Under section 5858 such necessity no longer exists. In *Feagin* v. *Beasley*, 23 *Ga.* 17, which was a suit for a breach of warranty as to the physical soundness of a slave, representations of a negro slave, made during a medical examination, as to his physical soundness, were admitted on the ground of necessity, because, under the statutes existing at that time, a slave was not competent to testify against a free white person. The necessity to prevent the miscarriage of justice made such representations to a medical examiner admissible in evidence. When the rule preventing a slave from testifying was abolished, the necessity for receiving such representations ceased. It would seem that where death has sealed the mouth of a witness, the same necessity would make admissible his representations to his physician as to his injury and its cause, it being contended that such injury was the cause of his death, and there being no other witness thereto except the deceased. Representations made to a physician in *A., K. & N. Ry. Co.* v. *Gardner*, 122 *Ga.* 82, 98 (49 S. E. 818), were inadmissible as being hearsay, the party making the representations being herself a witness and no necessity arising, such as the death of the party, to make an exception to the general rule.

The decision in *East Tenn., Va. & Ga. Ry. Co.* v. *Maloy*, 77 *Ga.* 237 (2 S. E. 941), is not in point, for there certain statements were held inadmissible as dying declarations in a civil case, they not being part of the res gestæ. No necessity was apparent in that case to show a variation of the hearsay rule, and no such point was raised as the one being here discussed. In *McNabb* v. *Lockhart*, 18 *Ga.* 495, the 9th headnote is as follows: "Where, from the nature of the case, other evidence was not to be obtained, and there would be a failure of justice without the oath of the party, ought he not be allowed to testify? Quere." In the opinion it was said: "That nothing a man says or does can be given in evidence to support his own cause is a good general rule. It has, however, like all other general rules, exceptions; otherwise, better without the general rule. In Sampley *v.* Scott (24 Miss. Rep. 528), the court say: 'It is cer-

tainly true, as a general rule, that statements or admissions made by a party interested in the result of a suit can not be given in evidence in his favor. But the rules of evidence are adopted for practical purposes in the administration of justice, and must be applied in such a way as to promote the ends for which they were designed. And the courts have, therefore, admitted many exceptions to the above rule. The instances in which the statements or admissions of a party have been received in his own favor have been so frequent as to constitute it almost a rule rather than an exception that they may be received in cases of extreme necessity, where, from the nature of the case, no better evidence can be reasonably expected.'" See also 14 Ann. Cas. 449.

In Omberg v. U. S. Mutual Asso., 101 Ky. 303, 309 (40 S. W. 909, 72 Am. St. R. 413), we find the following: "We are of the opinion, also, that the declaration of the patient to his attending physician, to the effect that the injury was the result of a bite, was competent. A narrative of the events attending the mishap would not be competent, but the patient may tell what the injury is, if he knows. He is suffering, and is seeking relief. To get it he must tell the truth. Any other course would mislead his physician, and might result disastrously. He knows whether he has bruised the inflamed parts, or whether he has been bitten by an insect. Such statements are part of the description of the wound, and inseparable from the patient's complaint with respect thereto. The case of Dabbert v. Insurance Co., 2 Cin. Super. Ct., 98, is directly in point. This case is reported by Mr. Bigelow in Vol. 4, p. 366, of his Life and Accident Insurance Reports, and the court (Judge Alonzo Taft) holds that 'In an action for loss under a policy against death by accident, a statement made by a decedent to his physician, upon which the physician forms his opinion and makes a prescription, is competent evidence to prove what was the actual cause of his illness and death, although the symptoms are such as might be produced either by disease or by the accident.' In that case the insured became suddenly sick, and to his physician attributed his sickness to an injury to his back and side by a fall received when no one was present. The learned judge said: 'I am satisfied that there is a tendency in the decisions of the present time to enlarge the range of testimony, especially when it is necessary to avoid a failure of justice. The statements of the history of his case, made to his physician by his

patient, who is seeking relief from pain and severe sickness, are entitled to credit. To state untruly to his doctor the cause of the sickness would be directly against his most vital interest in saving his health and life. In such a case the absence of a statement by the patient of such a cause of his sickness would be an important element in forming the physician's opinion.' For, 'if a patient did not refer to such an accident as the cause of his sickness, the doctor would necessarily conclude that the symptoms did not come from such a cause.'" See also Quaife *v.* Chicago &c. R. Co., 48 Wis. 513 (4 N. W. 658, 33 Am. R. 821) ; Yeatman *v.* Hart, 6 Humph. Tenn. 375; Feagin *v.* Beasley, supra; Stone *v.* Watson, 37 Ala. 279; Eckles *v.* Bates, 26 Ala. 655; Cronin *v.* Fitchburg &c. R. Co., 181 Mass. 202 (63 N. E. 335, 92 Am. St. R. 408) ; Harriman *v.* Stowe, 57 Mo. 93; Rogers *v.* Crain, 30 Tex. 284. We believe that under the circumstances of the instant case, the evidence was admissible as a matter of necessity.

The *McNabb* case, supra, was no doubt largely instrumental in the enactment of the rule now codified in section 5858 of the Civil Code (1910). Substantial justice often demands a liberal rather than a strict construction of a rule of evidence, and we feel that under the facts and circumstances of this case the trial court did not err in allowing the attending physician to testify as to the sources of his information, and the grounds and reasons, in other words the history of the case, on which he, as an expert, based his testimony as to the cause of the death of the insured. In Travelers Ins. Co. *v.* Hunter, 30 Tex. Civ. App. 489 (70 S. W. 798), it was held that a failure of the insured to mention the accident to his physician will not create a presumption that there was no accident. It can thus be seen that it can be and has been urged that a patient's failure to represent to his physician the cause of his injury is a presumption against the fact of there being an accident. There is quoted in plaintiff's brief a recent decision of Judge Sibley, in passing on this same accident in another suit, against another company. He said: "We much doubt there being sufficient proof to show that any physical injury was received in an automobile accident. No witness so testified. *The deceased made no such claim to his wife or physician.*" (Italics ours.) If inferences are to be drawn from the fact that the deceased made no such claim or statement to his wife or physician as to the cause of the injury so as to

defeat the claim, we can not see why his statement made to his physician should not be relevant in considering the weight and credit to be given the physician's testimony as to the cause of the death, as well as being a fact to explain conduct and ascertain motive. If the insured had a wreck with his car, it was a natural and normal thing for him to tell his physician about it to explain his evident pain. Certainly his doctor was entitled to know about it in order intelligently to form an opinion concerning the forthcoming operation on the insured. If the injury or blow received in the wreck, if there was a wreck of the car, so aggravated and accelerated an existing physical condition as to make immediately necessary an operation for hernia, and the blow or injury caused such a strain on the heart and arteries as to make them unable to withstand the anesthetic, such injury and accident may be considered by the jury as the proximate cause of the death of the insured. In our opinion the evidence of Dr. Griffin was properly admitted.

In view of the foregoing ruling in favor of the defendant in error, it is unnecessary to consider the assignments of error in the cross-bill of exceptions.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. MacIntyre and Guerry, JJ., concur. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. In my opinion the obviously hearsay evidence of Dr. Griffin as to the statement of the insured that he was shaken up in a Ford car was inadmissible, and, under all the facts of the case, its admission was prejudicial to the defendant and should require another hearing of the case. See, in this connection, *East Tenn., Va. & Ga. R. Co.* v. *Maloy,* 77 *Ga.* 237 (2) (supra); Boston & Albany R. Co. *v.* O'Reilly, 158 U. S. 334, 337 (15 Sup. Ct. 830, 39 L. ed. 1006). It is true that there are some cases in other jurisdictions where contrary rulings have been made, but those rulings are not in accord with the decisions of the Supreme Court of this State, the Supreme Court of the United States, and the courts of last resort of many of our sister States. Furthermore, I do not think that the error in admitting the evidence of Dr. Griffin was cured by the instruction of the court to the jury that they should consider the evidence only for the purpose of explaining the physician's conduct in examining the insured and advising and performing an operation upon him, since, under the facts of

the case, the evidence was not admissible for any purpose whatsoever. The other evidence as to the alleged wreck and the bodily injury of the insured therein was wholly circumstantial, and did not demand a finding that the insured had sustained a bodily injury in an automobile wreck. It is easily conceivable that the jury, despite the foregoing instructions of the court, in deliberating upon the case, were unable to dismiss the illegal testimony of Dr. Griffin from their consideration, and that this testimony may have consciously or unconsciously influenced them in reaching their verdict. As stated by Mr. Justice Shiras, speaking for the Supreme Court in the O'Reilly case, supra (where a physician was permitted, over the objections of the defendant, to testify that the plaintiff, sometime after the accident, made certain statements to him about his injury), "It is impossible to say that the defendant's case was not injuriously affected by the admission of the evidence, and, while an appellate court will not disturb a judgment for an immaterial error, yet it should appear beyond a doubt that the error complained of did not and could not have prejudiced the rights of the party duly objecting. Deery v. Cray, 5 Wall. 795, 807 [18 L. ed. 653]; Gilmer v. Higley, 110 U. S. 47 [3 Sup. Ct. 471, 28 L. ed. 62]."

If another trial could be had with this illegal and prejudicial evidence eliminated, another jury could more intelligently and fairly pass upon the issues of this case.