## 27449. LATHEM *v.* HARTFORD ACCIDENT AND INDEMNITY COMPANY *et al.*

DECIDED JULY 14, 1939. REHEARING DENIED JULY 28, 1939.

*Charles J. Thurmond, Wheeler & Kenyon,* for plaintiff.
*William P. Whelchel,* for defendants.

MACINTYRE, J. This is a workmen's compensation case. Mrs. Roy E. Lathem filed a claim against Davis-Washington Company and Hartford Accident and Indemnity Company. The director made the following finding: "That the deceased Roy E. Lathem had a pre-existing interior deformity. (b) That he suffered a strain which set up a condition resulting in his death. (c) That the strain suffered by the deceased was sustained while he was working for Davis-Washington Company, and that it arose out of and in the course of his employment. (d) That notice of the claim of accident was given to Davis-Washington Company within the thirty-day period, as provided by law. (e) That the weekly wage of the deceased at the time of his injury was $18.46. (f) That Mrs. Roy E. Lathem, the wife, and a two-year-old daughter

were wholly dependent upon the deceased for support; and that they as such dependents were entitled to receive compensation from the defendants, in certain sums as set forth in the award, for a period not exceeding three hundred weeks from the date of the accident. (g) That the defendants should also pay $100 on the funeral expense of the deceased, and reasonable medical and hospital bills for his last sickness." On appeal, the board of directors of the Industrial Commission unanimously affirmed the findings, and approved the award as made by the director. The insurance carrier appealed to the superior court; and the judge, in reversing the findings of the Industrial Commission, said "that the findings of fact and the conclusions of law are unsupported by the evidence in said case; and further, that there is not sufficient competent evidence in the record to warrant Director Tucker and the full board of directors in making the award, order, or decree complained of; and that the facts found by Director Tucker and approved by the full board do not support the award thus made." The correctness of this ruling is now before this court, and the only question presented is whether or not there was sufficient competent evidence to sustain the award.

It is admitted by the defendants in error that the Industrial Commission was authorized to find "that the deceased was employed at the date and time contended by the claimant," but they contend that "all of the evidence even tending to show an accidental injury is based on hearsay." The Code, § 38-301, declares: "Hearsay evidence is that which does not derive its value solely from the credit of the witness, but rests mainly on the veracity and competency of other persons. The very nature of the evidence shows its weakness, and it is admitted only in specified cases from necessity." In *Mutual Life Insurance Co.* v. *Davis*, 48 *Ga. App.* 742, 746 (173 S. E. 471), this court said: "It would seem that where death has sealed the mouth of a witness, the same necessity [to prevent the miscarriage of justice] would make admissible his representations to his physician as to his injury and its cause, it being contended that such injury was the cause of his death, and there being no other witness thereto except the deceased." See also *Feagin* v. *Beasley*, 23 *Ga.* 17; Omberg v. U. S. Mutual Association, 101 Ky. 303 (40 S. W. 909, 72 Am. St. R. 413); Eckles v. Bates, 26 Ala. 655; Rogers v. Crain, 30 Tex. 284;

Wilhelmi *v.* American Railway Express Co. (N. J.), 142 Atl. 555. Under that ruling it follows that the testimony of Dr. W. R. Garner, who first attended the deceased after the injury, that the deceased told him that he obtained this injury while lifting a box of glass, was admissible, if for no other reason, out of necessity. It is admitted that the Industrial Commission was authorized to find that the deceased was employed by Davis-Washington Company on April 16, 1936, the date of the alleged injury; and "even though there is no direct evidence that an injury to a workman arose out of and in the course of his employment, an inference to this effect may be drawn where the known facts are more consistent with the theory that the injury did so arise than with the theory that the accident occurred in some other manner." Bradbury's Workmen's Compensation Law, 400 (10).

Page Lathem testified that he saw the deceased working on the Robinson-Ham Building, a building being repaired by Davis-Washington Company, on April 14 and 15, which was the week following the Gainesville storm. Joe Reed testified that he carried the deceased and Jack Monday to work for Davis-Washington Company, that they worked together on the Robinson-Ham Building, and that they were doing the same class of work. Jack Monday testified that the deceased worked with him until the time he got hurt, that he himself received fifty cents per hour, and that he did not know what the deceased received, but that glaziers received from forty to fifty cents per hour. There was other evidence that the deceased received twenty, twenty-five, and forty cents per hour. Joe Ash testified that he carried dinner to his father, two or three days before the Saturday the doctor came, which was April 18, 1936. Mrs. Lathem, the claimant, testified that the deceased was twenty-five years old, weighed around 175 pounds, was about five feet ten inches tall, and was a very able-bodied man; that he came home on April 16, complaining of excruciating pain in the region of his right hip and back, stating that he had received a strain lifting a box of glass; that he did not rest well that night, and she tried to persuade him to remain at home the next day; that he worked all the next day, and, although she again urged him to remain at home, he went to work again on Saturday, April 18; that on "Saturday night, when he came home, his brother was dragging him and he was holloing until the neighbors heard him,

and we called the doctor, Dr. Garner, and he came out there and examined him." Wash Lathem, brother of the deceased, testified that he filed notice of the deceased's injury within thirty days from the date of the injury; that on Saturday, April 18, he picked up the deceased in his automobile to carry him home, having noticed something was wrong with him; that the deceased "went to get into the car, and he liked to never gotten in. He was holding himself, and I assisted him as much as possible;" and that he let the deceased out at a store about one fourth of a mile from his home, to pay a bill and get some groceries. Mrs. Norah Ash, who lived across the road from the deceased, testified that "he came home on Saturday afternoon, crying and complaining of his back, and he couldn't walk all the way home. He came from town and stopped out at his brother's out there, complaining, and he almost carried him on home; and then they called Dr. Garner, and he came down there that night and examined him the best he could. He couldn't get to bed; he sat in the chair until some men put him to bed; and the doctor asked him a good many questions, and examined him the best he could."

Dr. W. R. Garner testified, that he first treated the deceased for a boil about the first of April; that he first treated the deceased for the back injury on April 18, 1936; that because of such injury he took a urine test and found blood in the specimen; that he watched the deceased for a few days, and then had him removed to a hospital; that an operation followed which he witnessed, and which revealed nothing that was expected, and so "he [deceased] was closed up without anything being done;" that an autopsy was performed after death, and "we also found that he had a swelling in the region of the right lumbar muscles in the back anterior, and we investigated the swelling and found what we called the psoas muscle, a very large abscess with a great amount of pus;" and that this muscle was used in lifting heavy objects. (There was evidence that the boxes of glass weighed from forty to sixty pounds.) Dr. Whelchel, who performed the autopsy, read the following part of his findings: "Cause of death, septicæmia, miliary abscesses of left kidney; psoas abscess (cause undetermined)." He stated that with an abrasion or boil containing pus, if the pus escaped into the blood stream, as a rule it settled in the weakest part of the body; that there was no way for this

bacteria to get into the psoas muscle, other than through the blood stream, unless there was external violence; and that this septicæmia could be set up by disease, bad tonsils, or any infection anywhere in the body. He made the following answers to questions: "Q. And you treated him just as good as you could, and he died, and after his death you found an abscess of the psoas muscle? A. Yes, sir. Q. That caused his death? A. Yes, sir." Dr. M. B. Allen, who attended the deceased three times before his death and who attended the autopsy, gave the following testimony: "Q. So from your history of the case, your experience as a practitioner, is it your opinion that Roy Lathem died from that abscess in his psoas muscle? A. Yes, sir, that and his kidney." He further testified that the abscess in the psoas muscle and the condition of his kidney were caused by the injury that Lathem received to his back, as related to the witness by the deceased. Dr. Rogers testified that from the history of the case, he having followed the course of the deceased's trouble throughout until his death, he was of the opinion that the injury was the proximate cause of the deceased's death.

It is unquestionably true that the award must be supported by the findings of fact, and every finding of fact must have some substantial evidence for its support. It must result from this that a finding of fact made by the commission can not be based on mere conjecture any more than can a finding of fact made by a court. It can not be upheld without evidence to support it. 1 Honnold on Workmen's Compensation, 785, § 230. We recognize the doctrine that declarations made to an attending physician are admissible when they relate to the part of his body which is injured, his suffering, symptoms, and the like, but generally are not admissible if they relate to the cause of the injury. Riley v. Carnegie Steel Co., 276 Pa. 82 (119 Atl. 832); Ginsberg v. Burroughs Co., 204 Mich. 130 (170 N. W. 15); Shaughnessy v. Holt, 236 Ill. 485 (86 N. E. 256, 21 L. R. A. (N. S.) 826); Amys v. Barton, 1 K. B. 40; Peoria Cordage Co. v. Industrial Board, 284 Ill. 90 (119 N. E. 996); Boyd v. Industrial Com., 88 Utah, 173 (48 Pac. 2d, 498); State v. Davidson, 30 Vt. 377 (73 Am. D. 312). Yet, in order to prevent a miscarriage of justice, there are exceptions to this general rule. In the instant case the complaints, exclamations, and expressions of the deceased to the doctors, which included the state-

ment that he was injured while lifting a box of glass, were admissible not only out of necessity but also for the reason that such statement was proper to enable the physician to better understand the illness, was part of the description of the injury, and was inseparable from the deceased's complaints with respect thereto. Shade *v.* Covington-Cincinnati Elevated Ry. &c. Co., 119 Ky. 592 (84 S. W. 733, 734); *Mutual Life Ins. Co.* v. *Davis,* supra.

In Wright *v.* Kerrigan, 4 B. W. C. C. 432, which was very similar on its facts to the case at bar, it appeared that a man 70 years of age was employed by an undertaker, part of his job being to lift coffins. One day he went to his work, apparently well, and on his return home he complained to his wife of having been hurt that day. There were marks on his chest, and his leg was swollen. He died a week later from pneumonia which was caused by injury. There was no direct evidence showing that an accident had been sustained by the deceased in the course of his employment. He stated to the doctor who attended him that the pain of which he complained was the result of an accident, and the doctor informed the employer that "deceased said he met with an accident by the moving of a coffin." On this evidence the recorder of Dublin found that death had been due to injury by accident arising out of and in the course of the employment. The Court of Appeal of Ireland held that there was evidence to support the inference. In a note to that case the court quoted from Mitchell *v.* Glamorgan Coal Co., 9 W. C. C. 16, as follows: "As to the admissibility of statements made by deceased to his doctor, with regard to his bodily injuries and their immediate cause, Cherry, L. J., said: 'Such statements are invariably admitted on various grounds, the chief of which is that there is no other possible evidence. Those statements made, not necessarily to a doctor, but to any person, as to bodily injuries, are admissible.'" In Hammond *v.* Industrial Commission, 84 Utah, 67 (34 Pac. 2d, 687), it was said: "'Where it appears that the physician testifying was called by the injured person in his ordinary professional capacity and for purposes of securing relief from pain and for medical treatment, and there are no circumstances casting suspicion on the genuineness of the utterance, all statements of symptoms and sufferings, whether past or present, and *though involving statements as to the nature of the accident,* if necessary to a diagnosis by the physician, may be tes-

tified to by him.' [Italics ours.] . . If the declarations or statements are descriptive of or characterize a present pain, suffering, or symptoms, they are admissible, to whomsoever made. Various reasons have been stated for the admissibility of such evidence. By some texts and by some judicial decisions the admissibility is put on the ground or theory of res gestæ. But that does not necessarily mean res gestæ to the happening of the accident or contemporaneous with the infliction of the injury. Declarations made at such time and which tend to explain, illustrate, or characterize the transaction and which are a part thereof are admissible under the res gestæ rule, though they may not be declarations of pain or suffering."

Certainly the testimony of the wife as to the condition of her husband when he came home Thursday, April 16, holding his back and complaining that it hurt him awfully; that Friday morning he was still in pain, and that Saturday his pain increased, and Saturday afternoon his brother was dragging him when he came home; that he was put to bed where he remained until his death on June 8, was all competent. Her testimony was direct that he was in good physical condition, weighing about 175 pounds before the injury, and ever since she had known him. Nor were the expressions, exclamations, or complaints to her that he had strained himself lifting a box of glass subject to objection. Such expressions were descriptive of *present pain* complained of by the deceased, and were expressive of *natural reflexes* of what it might *be impossible* to show by other testimony. Travelers Insurance Co. v. Mosley, supra; Hammond v. Industrial Commission, supra. The evidence objected to was not in the nature of a narrative of when, where, and how the accident occurred, but should more properly be construed as being in the nature of such complaints, exclamations, and expressions as usually and naturally accompany and furnish evidence of a present-existing pain or malady. It was properly admitted. Travelers Insurance Co. v. Mosley, supra; Hammond v. Industrial Com., supra; Bacon v. Charlton, 61 Mass. 581, 586.

From the foregoing it is seen that the evidence introduced with respect to an accidental injury was not entirely hearsay, as urged by the defendant in error, but that the applicant, by competent evidence, sustained the burden of proof that the death was caused

by an injury arising out of and in the course of employment. The judge therefore erred in setting aside the award of the full board of directors allowing compensation.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*

ON MOTION FOR REHEARING.

MacIntyre, J.   We recognize the general rule urged by the defendants in error, that "hearsay testimony is not only inadmissible, but wholly without probative value;" for in the opinion we quoted the Code, § 38-301, which declares the hearsay rule. However, the evidence in question in the instant case comes within an exception to the hearsay rule, and was admissible not only out of necessity but also because the declarations of the deceased were confined to complaints, expressions, and exclamations as to present-existing pain or malady, and exclamations of present existing pain are not restricted to the time of the accident.   It is true that Jack Mundy, the deceased's immediate foreman, testified that the deceased made no outcry of any injury or pain, and that the witness did not know of any accident or injury received by the deceased until several days after work on the building in question had ceased.   We are also mindful of the testimony of Hoyt Martin, general foreman, who testified that he was on every job with the deceased, and that the deceased made no complaint to him, and did not say anything to him about any accident or injury to his back while on the job.   However, this evidence together with the evidence of the claimant, presented in the opinion, formed an issue of fact, first for determination by the director and then for determination by the board.   This issue was decided in favor of the claimant, and the sole question before this court is whether or not there was any evidence to authorize their findings.   From what was said in the opinion, it is clear that the evidence amply authorized a finding in favor of the claimant.

With reference to the admissibility of the declarations and exclamations of the deceased, it was said in *Western & Atlantic R. Co. v. Beason,* 112 *Ga.* 553, 557 (37 S. E. 863) : "The real test is : were the declarations a part of the occurrence to which they relate [the present existing pains], or were they a mere narrative concerning something which had fully taken place and had therefore become a thing of the past?"   The declarations in the instant case were a part of the occurrence to which they related; and

this case is distinguishable from the rulings in *Fulton* v. *Metropolitan Casualty Insurance Co.,* 19 *Ga. App.* 127 (91 S. E. 228), *Western & Atlantic R. Co.* v. *Beason,* supra; *Mutual Benefit Health & Accident Asso.* v. *Bell,* 49 *Ga. App.* 640, 641 (176 S. E. 124), and *Bolton* v. *Columbia Casualty Co.,* 34 *Ga. App.* 658 (130 S. E. 535), cited by the defendants in error in the motion for rehearing; for the reason that in those cases the declarations of the deceased to other persons sought to be introduced in evidence were merely narrative and descriptive of something which had fully taken place and which had become a thing of the past, and were properly excluded, or, even if not excluded, had no probative value, because they were hearsay. Here a man was crying out with pain, and was seeking the aid of friend, family, and doctor; and his exclamations and expressions were such as usually and naturally accompany and furnish evidence of a present-existing pain or malady.

*Rehearing denied. Broyles, C. J., and Guerry, J., concur.*