14806.  AUSTIN BROTHERS BRIDGE CO. *et al. v.*
WHITMIRE.

1.  While the Georgia workmen's compensation act is in derogation of the common law, yet, in view of its beneficent purpose and remedial character, it should be so liberally and broadly construed as to effect its general purpose in every instance in which its language is such as to render judicial interpretation necessary.

2. The amounts of compensation allowed an injured employee coming within the terms of the workmen's compensation act, the periods for which such compensation is allowed, and the conditions upon which it may be increased, diminished, or suspended altogether are determined by the provisions of sections 30, 31, 32, and 33 of the act.

(a) The "capacity" with which the law is concerned in such cases is "earning capacity."

(b) Incapacity for work resulting from such an injury is total, not only so long as the injured employee is unable to do any work of any character, but also while he remains unable, as a result of his injury, either to resume his former occupation or to procure remunerative employment at a different occupation suitable to his impaired capacity.

(c) Such period of total incapacity may be followed by a period of partial incapacity, during which the injured employee is able both to procure and to perform work at some occupation suitable to his then-existing capacity, but less remunerative than the work in which he was engaged at the time of his injury. That situation constitutes partial incapacity.

(d) Except as specifically provided in section 32 of the act, such partial incapacity terminates when the employee again becomes capable of earning the same wage he earned before his injury, whether at the same or at a different occupation, and without regard to such personal inconveniences as may result to him solely from his injury and which are not caused or aggravated by his new employment.

(e) For the period of total disability, whether resulting from injuries specifically mentioned in section 32 or from injuries covered only by section 31, the employee is entitled to the compensation provided by section 30 of the act.

(f) For the succeeding period of partial disability, if resulting solely from one or more of the injuries specifically mentioned in section 32, the compensation must be as prescribed by section 32, and not otherwise; but if such partial disability results solely from such injuries as are covered only by section 31, then the compensation must be as provided by section 31; if, however, such partial disability results in part from injuries described only in section 31 and in part from injuries specifically mentioned in section 32, then the aggregate compensation is that allowed by the act for both classes of injuries, the amount allowed for each injury being dependent upon the section of the act providing for it and the aggregate amount being kept within the maximum allowed by the statute.

(g) The refusal of an injured employee to accept employment suitable to his then-existing capacity upon its being procured for him, operates to suspend his compensation entirely during the continuance of such refusal, unless in the opinion of the industrial commission such refusal was justified. It is also the duty of such employee to endeavor to obtain such employment for himself; but, before such apparent capacity to work can operate either to suspend his compensation or to terminate his period of total incapacity, it must be made to appear that such employment has been procured for him and that he has unjustifiably refused to accept it.

3. When the superior court, in reviewing the findings of the industrial com-

36

mission, recommits the controversy to the commission for further hearing or proceedings, it is essential that the judgment be accompanied by an opinion directing the attention of the commission to the precise errors to be cured or the precise deficiencies to be supplied upon a reconsideration of the case by the commission.

DECIDED JANUARY 17, 1924.

Appeal; from Dougherty superior court—Judge Custer. June 12, 1923.

This case arose under the Georgia workmen's compensation act (Ga. L. 1920, p. 167). The injury in question having occurred on December 28, 1921, the case is not affected by the amendatory acts of 1922 and 1923. (Ga. L. 1922, p. 185; Ga. L. 1923, p. 92.)

Both Austin Brothers Bridge Company, the employer, and W. D. Whitmire, the employee, had previously accepted the terms of the act. The Maryland Casualty Company was the insurance carrier. The accident occurred in work upon a bridge over Flint river, in Dougherty county, Whitmire falling a distance of fifty feet upon a pile of rocks only partially covered with water in the bed of the river, due to a collapse of the scaffold upon which he was working. His injuries consisted of a fracture of the skull, a fracture of one lower jawbone, a dislocation of his left shoulder, a Colle's fracture of his left arm, a lacerated lower lip with perforation from chin to mouth, a lacerated nose, lacerations of the scalp over three inches in length, a lacerated and contused left hip, a lacerated left thigh, and a fracture at the base of his right thumb. It was more than two weeks before Whitmire regained consciousness; but immediately after the injury he was sent by his employer to a hospital, where proper nursing, as well as surgical and medical treatment, were furnished, at a total cost of $992, which was paid by the insurance carrier. He left the hospital on February 7, one month and ten days after his injury, with mental condition restored, all flesh wounds apparently healed, and the wrist wound, which was the most stubborn of all, giving promise of being healed within another month. At the time of his accident and for twelve months prior thereto Whitmire was earning $24 per week.

At the hearing, which was before a single member of the industrial commission, on September 12, 1922, only three witnesses were examined—Dr. Barnett, the physician who treated the wounds and who was a witness for the insurer; Dr. Hilsman, a physician selected by the commission as impartial and disinterested; and the

employee, Whitmire. The only issue between the parties was as to the effect of Whitmire's wounds, touching his capacity or incapacity to work as a result of such wounds. The commissioner's notice of his award, made September 27, 1922, briefly summarizes the testimony of the two physicians, but apparently ignores Whitmire's testimony, although it is directly in point and material parts of it are uncontradicted. The commissioner then says: "The award is as follows: The insurance carrier will pay compensation at the rate of $12 per week from December 28th to April 7th. Beginning on April 7th, they will pay compensation at the rate of $12 per week for twenty-five per cent. disability of the wrist. Total disability of the wrist would be payable for sixty weeks. Twenty-five per cent. of this would be fifteen weeks. The insurance carrier will pay compensation beginning April 7th and continuing for fifteen weeks." Being dissatisfied with the amount of that award, Whitmire appealed to the full commission. That body, upon a review of the case on December 22, 1922, held: "It has seemed to the commission, after a careful review of the evidence in this case, that Commissioner Slate has given to W. D. Whitmire all the compensation allowed by law, and all that he could reasonably expect. Under the Georgia law, compensation cannot be awarded because of inability to continue the occupation engaged in when the accident occurred, but the claimant must be unable to do any work of any character. In cases of partial disability compensation is based on the ability to earn, whether in the former occupation or another. This claimant was badly injured. Every medical and hospital service was resorted to in the effort to place him again upon his feet. His condition is now such that he can follow certain lines of occupation. If there should be a return of disability as a result of this accident, the award can be again reviewed or modified on the ground of a change in condition. The findings of fact and conclusions of law, as shown in the award of Commissioner Slate, are herewith approved and affirmed, all the commissioners concurring, except Commissioner George M. Napier, who dissents with respect thereto."

On appeal to the superior court the following judgment was rendered: "This case being presented to the court upon briefs, it is ordered that the case be remanded to the commission for further consideration and adjudication, upon the grounds: (a) that the

facts found by the industrial commission do not support the award; (*b*) that the order of the commission is contrary to law; and it is so ordered." To this judgment the employer and the insurer excepted generally, and also upon the specific ground that "the order and judgment as rendered by said presiding judge is too uncertain and indefinite, in that it fails to point out wherein the decision of the industrial commission was erroneous, and fails to give specific direction to the commission in reference to its findings upon a reconsideration of the case."

The other facts of record, so far as material here, appear in the opinion.

*Pottle & Hofmayer,* for plaintiff in error.

*Pope & Bennet,* contra.

LUKE, J. (After stating the foregoing facts.)

1. From prior decisions of this court, and from the decisions of other jurisdictions having laws similar to the Georgia workmen's compensation act, the rule seems to be well settled that, although such acts are in derogation of the common law, yet, in view of their beneficent purpose and remedial character, they are to be so liberally and broadly construed as to effect their general purpose in every instance in which the language is such as to render judicial interpretation necessary. *Jones* v. *Georgia Casualty Co., 30 Ga. App.* 207 (117 S. E. 467); *New Amsterdam Casualty Co.* v. *Sumrell, 30 Ga. App.* 682 (118 S. E. 786); 28 R. C. L. 739, 755.

2. The amount of compensation to which this employee is entitled (which is the whole case in so far as its merits are concerned) turns mainly upon the question: What constitutes the periods of "total incapacity" and of "partial incapacity," under the facts of this case and within the meaning of the Georgia workmen's compensation act? The statute itself does not expressly define either of these periods, except as to the partial incapacity resulting solely from the specific injuries scheduled in section 32 of the act. This case, however, involves some injuries which are not scheduled in section 32, the most serious of which is the injury to the employee's head, as well as some which are scheduled in section 32, all of which together render him permanently unfit for a resumption of his former employment, but not wholly incapacitated for every other kind of work. Such is the commission's finding of

fact, and is the only inference reasonably and fairly deducible from the evidence in point.

The answer to the foregoing question must be found in sections 30, 31, 32, and 33 of the workmen's compensation act. In *Jones* v. *Georgia Casualty Co.*, supra, this court construed sections 30, 31, and 32 of the act with respect to the amount of compensation payable where the periods of disability are determined. That decision does not, however, deal with the rules for determining either of such periods. But from that decision and the express provisions of the act, it appears that, with these periods of disability determined, the rules for determining the amount of compensation payable are, briefly stated, as follows: For the period of total disability, whether resulting from injuries specifically mentioned in section 32 or from those covered only by section 31, the employee is entitled to the compensation provided by section 30 of the act. For the succeeding period of partial disability, if resulting solely from one or more of the injuries specifically mentioned in section 32, the compensation shall be as provided by section 32; if resulting solely from such injuries as are covered only by section 31, then the compensation shall be as provided by section 31; but if resulting in part from injuries described only in section 31 and in part from injuries specifically mentioned in section 32, then compensation shall be allowed for both classes of injuries, the amount allowed for each injury being dependent upon the section of the act providing for it and the aggregate amount being kept within the maximum allowed by the statute. 28 R. C. L. 819 et seq.

. In determining what constitutes the periods of total and partial disability respectively, it must be borne in mind that the "capacity" with which the law is concerned is "earning capacity." This plainly appears from sections 31 and 32 of the act. As to the particular injuries mentioned in section 32, the amount of compensation is arbitrarily fixed by that section. But for the partial disability resulting from that class of injuries covered only by section 31 the employee is entitled to no compensation whatever if he is able to obtain different employment as remunerative as that in which he was engaged at the time of his injury, and is entitled only to a reduced compensation if he is able to procure any other employment suitable to his impaired capacity at any reasonable wage; and this is so regardless of such personal discom-

forts and losses of physical capacity as he may suffer as a result solely of such injuries. By section 33 of the act, it is expressly provided that "If an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal unless in the opinion of the industrial commission such refusal was justified."

From a consideration of sections 30, 31, 32, and 33 of the act together and in connection with their context, an injured employee's different periods of disability may be stated as follows: The incapacity for work resulting from such an injury is total not only so long as the injured employee is unable to do any work of any character, but also while he remains unable, as a result of his injury, either to resume his former occupation or to procure remunerative employment at a different occupation suitable to his impaired capacity. Such period of total incapacity may be, and usually is, followed by a period of partial incapacity, during which the injured employee is able both to procure and to perform work at some occupation suitable to his then-existing capacity but less remunerative than the work in which he was engaged at the time of his injury. That situation determines the period of his partial incapacity. Except as specifically provided in section 32 of the act, such partial incapacity terminates when the employee again becomes capable of earning the same wage he earned before the injury, whether at the same or at a different occupation, and without regard to such personal inconveniences as may result to him solely from his injury and are not caused or aggravated by his new employment. Before an employer can claim a reduction of compensation under the provisions of section 33 it must appear that the injured employee has refused employment procured for him suitable to his then-existing capacity. See also 28 R. C. L. 819-820.

For these reasons, among others, section 45 of the act provides, in effect, that an award of compensation shall never become final until fully paid, and expressly provides that the industrial commission may at any time review any award, either on its own motion or at the instance of any party to the controversy, on the ground of change in condition.

What, then, is the amount of compensation to which Whitmire is entitled? According to the uncontradicted evidence his incapac-

ity was total from the date of the accident, December 28, 1921, to the date of the hearing, September 12, 1922, there being no contention that employment suitable to his impaired capacity had been procured for him, and he having testified, without contradiction, to his repeated efforts to engage in other work, and to being unable to continue at it because of the pain it produced in his wrist wound, and to his being still unable to find any employment that was suited to his impaired capacity. For that period he was therefore entitled to the compensation provided by section 30 of the workmen's compensation act. His prior earning capacity being $24 per week, the amount of compensation was properly fixed at $12 per week, but the period for which it was allowed by the commission was too short.

When that period of total incapacity will be (or has been) succeeded by partial incapacity remains to be shown upon a further investigation of the case, or a review of the award, by the industrial commission. At that time the compensation to which Whitmire is entitled for partial incapacity, if any, may be fixed in accordance with this opinion.

3. Does the judgment of the lower court recommitting the controversy to the industrial commission, without direction or detailed opinion, sufficiently comply with the statute to withstand the assignment of error specially urged against it? By section 59 of the workmen's compensation act it is provided that, upon a review of the findings of the industrial commission, the superior court may set the same aside upon any one or more of five grounds therein specifically stated, or may enter the proper judgment upon the findings, or, in the language of the statute, "the court may recommit the controversy to the commission for further hearing or proceedings *in conformity with the opinion and judgment of the court*" (italics ours). Certainly no opinion or direction is required as a part of a *final* judgment in such case, nor could it serve any greater purpose in connection with such a final judgment than with a final judgment in any other case for stated sums of money. But where, as in this case, the finding of the commission is set aside, upon the general statutory grounds, and, in addition thereto, the controversy is recommitted to the commission for further hearing or proceedings, it would seem from the very nature of the case, as well as from the express terms of the statute, that some

form of direction is a practical, as well as a legal, necessity. No better illustration of the usefulness of this statutory provision is needed than that afforded by the facts of this case. The judgment of the superior court merely holds: " (a) that the facts found by the industrial commission do not support the award," and " (b) that the order of the commission is contrary to law," and thereupon recommits the controversy for further consideration by the commission. In what particular essential or essentials do the facts fail to support the award? On what particular point or points did the commission misinterpret the law? The judgment recommitting the case to the commission affords no answer to either of these questions. Without an answer to these questions the commission may be, and likely would be, in no better position to correct its errors upon a second hearing than it was to avoid them upon the first. It is to meet this situation that the statute requires that a judgment recommitting such a controversy be accompanied by an opinion. Without an opinion specifically pointing out the errors of the commission, or an order directing the commission specifically what to do, a judgment of the superior court recommitting such a controversy is incomplete.

No other error appears in the judgment. Without deciding what the result of such an error might be in cases hereafter brought to this court, under the particular facts of this case, direction is given that the judgment of the lower court be so amended as to advise the commission of the particular errors to be corrected upon a reconsideration of the case by it; and the judgment will thereupon stand affirmed.

*Judgment affirmed, with direction. Broyles, C. J., and Bloodworth, J., concur.*