26358.   LIBERTY   MUTUAL   INSURANCE   COMPANY
*et al. v.* HENRY.

Decided October 15, 1937.   Adhered to on rehearing, December 16, 1937.

*Neely, Marshall & Greene,* for plaintiffs in error.
*George & John L. Westmoreland,* contra.

GUERRY, J.   J. D. Henry filed claim with the Department of Industrial Relations for compensation for injuries received while erecting certain steel work for the Golian Steel & Iron Company. The insurance carrier denied liability, and claimed that Henry

was not an employee but was an independent contractor. The Department of Industrial Relations awarded compensation, and on appeal this award was affirmed by the judge of the superior court.

The evidence discloses that in March, 1935, the Golian Steel & Iron Company (hereinafter referred to as the Golian Company) entered into a written contract with the Georgia Railroad Company to do certain steel erection work on a building of said railroad company, to be erected in Atlanta. This contract provided, in part, as follows: "4. Consent to transfer. The contractor shall not let or transfer this contract, or any part thereof (except for the furnishing and delivery of material) without the consent of the chief engineer given in writing. . . 15. Superintendence. The contractor shall constantly superintend all the work embraced in this contract, in person or by the duly authorized representative acceptable to the company." The contract further provided: "Workmen's compensation insurance. The contractor shall comply with all the laws of the State where the contract is to be performed, arising under any 'workmen's compensation act,' and shall at all times carry and pay the premiums on all policies of insurance required by the laws of the State where the work is being performed, under any 'workmen's compensation act,' so that the company shall be fully protected from any and all claims for damages for personal injury, including death, which may arise from operations under this contract, whether such operations be by himself, or by any subcontractor, or any one directly or indirectly employed by either of them." The claimant together with J. A. Bladen, Grady Stuart, and Tom Veitch, all of whom were steel workers but had never before been associated in any joint enterprise, went to the Golian Company to secure employment in the construction of the building provided for in the above contract. They made a verbal agreement with the Golian Company to erect the steel work for $500 and, according to the claimant's testimony, the payment by the Golian Company of the premium necessary to cover the job with workmen's compensation insurance. The Golian Company had a policy of insurance with the Liberty Mutual Insurance Company covering its general operations, and the premium thereon was based on the compensation paid by the Golian Company to its employees during the period of such policy,

and was to be determined by an inspection of the books of said company. After the contract between the Golian Company and the claimant and his associates was entered into for the erection of the steel work, the Golian Company applied to the Liberty Mutual Insurance Company for coverage under this contract, "for the reason that these men did not have insurance, and we [Golian Company] wanted to be protected." The Liberty Mutual Insurance Company thereupon issued its certificate to the Georgia Railroad Company (as required by the provisions of the contract between Golian Company and the railroad company), showing that the "steel erection work performed by J. A. Bladen, subcontractor," was covered under the compensation policy issued to Golian Company, and a premium was paid to the insurance company, based on the $500 paid to claimant and his associates. The Golian Company refused to let the claimant and his associates begin work until arrangements were made in reference to compensation insurance. The claimant testified that his wages were $1 per hour, 40 hours per week. The Golian Company furnished the materials; and the amount received by each partner, "that would be our wages." The claimant and his associates were paid each Friday or Saturday as the work progressed, and the money was divided among them. The work was to be done "according to his instructions," and Mr. DeGolian would come down from time to time "to see how the work was progressing," according to the claimant's testimony. He further testified that DeGolian "was the man we were working for, and we had to abide by his orders." One extra helper was hired one day by the four men, and there were no profits or losses, the amounts received being divided among the four as their compensation for the work done.

We are of the opinion that this evidence authorized a finding by the Department of Industrial Relations that the claimant was an employee of the Golian Steel & Iron Company, and not an independent contractor. In determining whether a claimant in a workmen's compensation case is an employee and subject to the act, or an independent contractor and not so subject, any doubt is to be resolved in favor of his status as an employee rather than an independent contractor. 71 C. J. 449. See also *Austin Brothers Bridge Co.* v. *Whitmire*, 31 *Ga. App.* 560 (121 S. E. 345); *Van Treeck* v. *Travelers Insurance Co.*, 157 *Ga.* 204 (121 S. E. 215);

*Harden* v. *United States Casually Co.*, 49 *Ga. App.* 340 (175 S. E. 404). In determining whether one is an employee or an independent contractor, the nature of the work called for by the contract, the method of payment, whether by the piece, by the job, or in a lump sum, and other facts and circumstances in connection with the contract, are to be considered. However, the real test is whether or not the person employed to perform the work was, under the contract, to be free from the control of the employer as respected the manner in which the details of the work were to be executed. See *Bentley* v. *Jones*, 48 *Ga. App.* 587 (173 S. E. 737), and cit. It is said in 71 C. J. 474, that "payment of a weekly salary proportionate to the work done has been held to support the conclusion that the worker is an employee; and other authority has cited payment by the week as supporting the conclusion." The present claimant was injured early in the performance of the contract. The job was finished by his associates, and he received as compensation only part of that paid them before he was injured. He testified that his wages was $1 per hour, 40 hours per week. The evidence is not clear whether. the Golian Company might discharge the claimant before the completion of the contract. DeGolian testified that he had no right to discharge claimant *"as long as they were doing their work right."* The claimant testified: "I don't suppose he could; he might could have if he wanted to." It is not absolutely clear from the evidence that the claimant was an independent contractor, nor is it clear that he was an employee. The Department of Industrial Relations has found in his favor; and if there be any evidence to support their finding, it is our duty to affirm the award. While the claimant and his associates were to be paid a lump sum for the doing of specific work, if that compensation was arrived at and intended merely as a weekly salary for labor performed in the doing of the work, and if the Golian Company had more than general supervisory powers under the contract, that is, had the right to dictate to the claimant and his associates as to the manner of doing the details of the work (and we think the evidence authorizes the conclusion that the above was true), then the finding of the department is supported.

Moreover, it is unquestioned that the Golian Company was under contract with the Georgia Railroad Company to carry workmen's

compensation insurance to cover the work necessary in the construction of the building, whether the work was done by it or by an independent contractor. The Golian Company had a workmen's-compensation insurance policy, covering their general operations, with the Liberty Mutual Insurance Company, and, after entering into a contract with the claimant and his associates for the erection of the steel work, and before allowing them to enter upon the work, had said insurance company issue a certificate showing that this steel-erection work was covered in the contract, and paid a premium therefor based on the amount of money it paid to the claimant and his associates as compensation for their work. Section 71 of the workmen's compensation act of August 20, 1920, was amended by the General Assembly in 1933 by providing: "A policy of insurance issued under the Georgia workmen's compensation act shall always be first construed as an agreement to pay compensation; and an insurer who issues a policy of compensation insurance to an employer not subject to this act shall not plead as a defense that the employer is not subject to the act; and an insurer who issues to an employer subject to the act a policy of compensation insurance covering an employee or employees ordinarily exempt from its provisions shall not plead the exemption as a defense. In either case compensation shall be paid to an injured employee, or the dependents of a deceased employee, for a compensable accident, as if the employer and/or employee were subject to the act, the policy of compensation insurance constituting a definite contract between all parties concerned." Ga. L. 1933, p. 184 (Code, § 114-607). A policy of compensation insurance was issued covering the work to be done in erecting the steel. Whether those erecting such work were or were not employees, such as would be entitled thereto, the contract was a definite contract in favor of such workmen, and was binding on the insurer. The amending act of 1933, supra, was evidently intended to follow the reasoning as set forth by Justice Hines in his dissenting opinion in *Parker* v. *Travelers Ins. Co.,* 174 *Ga.* 525 (163 S. E. 159, 81 A. L. R. 472). The judge of the superior court did not err in affirming the award of the Department of Industrial Relations.

*Judgment affirmed. MacIntyre, J., concurs. Broyles, C. J., dissents.*