1. The following essential elements must be shown before an employee can recover an original award under the workmen's compensation act: (1) That there was an "accidental injury;" (2) That it arose out of and in the course of the employment; (3) That he is entitled to compensation in some amount, and what that amount is.
2. The first and second essential elements stated above are sometimes called preliminary adjudications, and when adjudicated on the hearing of an application for an original
award are to be taken as res judicata as to the right of the employer and the employee upon the hearing of an application for any subsequent review.
3. If the original award adjudicates that the employee is not entitled to compensation in any amount, and no appeal is duly taken therefrom, the doctrine of res judicata applies to the third essential element stated in headnote 1, and the physical condition of the employee does not remain open for further inquiry, and the case is ended.
4. On the other hand, where the original award allows compensation in some amount, the doctrine of res judicata, while it applies to the essential elements 1 and 2 on a hearing in any subsequent review, it does not apply to the third essential element, which is relieved of such *Page 899 
doctrine in the particular instances named in the Code. § 114-709, as amended, headed; "Review of award or settlement on motion of board or because of change in condition; award."
5. Periodic reviews do not require finality of previous decisions. Hence new hearings may be held where new evidence can demonstrate that there is such a change in condition as provided by the Code section above mentioned.
6. There was sufficient competent evidence to support the award of the director in favor of the claimant, and the judge of the superior court erred in setting aside the award of the full board, affirming the award of the hearing director.
 DECIDED DECEMBER 19, 1944.
There was an award or judgment in this case which rested upon and was supported by an agreement between the parties for an accidental injury that occurred on July 24, 1942. Lumbermen'sMutual Casualty Co. v. Cook, 195 Ga. 397, 399 (24 S.E.2d 309). The next award was on May 25, 1943, in which all further compensation was denied or ended. Another application for increased compensation on an alleged change of condition was filed on July 26, 1943. An award thereon in favor of the claimant was made by one director which was appealed to and affirmed by the full board on September 24, 1943. The employer filed an appeal to the superior court, and that court found that "the evidence, carefully considered, while weak, authorized a finding that the claimant had increased headaches and nervousness and nothing more. He was doing the same work, and earning the same wage. It did not appear anywhere in the evidence that his capacity to earn was less in September than at the time of the award of May 25, 1943. It is therefore ordered and adjudged: That the award of the board of September 24, 1943, be and the same is hereby set aside and judgment is hereby rendered in favor of the employer." To this judgment the claimant excepted.
The brief of evidence introduced on August 6, 1943, on the review here in question, claiming a change in condition since May 25, 1943, which we think, is correctly briefed by deputy-director P. T. Riordan, is as follows: "J. A. Rhindress, claimant, was called as a witness, and testified in substance as follows: That he sustained an injury in July, 1942, while in the employ of the Atlantic Steel Company; that he received compensation as a result *Page 900 
thereof; that he was off from work three weeks and returned to work and worked two weeks; that he returned to work on February 1, 1943, and has worked continuously ever since, as a watchman, which is a different job than the one he was working on at the time of his injury. That he went to the hospital on July 24, 1942, and stayed in the hospital until July 29, 1942. That Dr. Swanson performed an operation while he was in the hospital; that he returned to work about August 17, 1942, and worked a little over two weeks on the job he was working on at the time of his injury; that he wasn't able to do the job and asked for some kind of work that he could do; that his employer asked him if he wanted a chair to sit in; that he replied that he had one and didn't like to sit in it very well; that he went to see the doctor, and went back to the hospital about September 25, 1942, and stayed in the hospital around two weeks. That Dr. Swanson reexamined him, took X rays, and performed another operation on his head; that on February 1, 1943, he returned to work for the Atlantic Steel Company as a watchman; that since May 25, 1943, his condition is worse; that he suffers from dizziness and headaches, and has to take aspirin to stop his head from aching; that since May 25, 1943, the pain in his head is worse; that prior to May 25, 1943, he got pretty nervous if he tried to do anything; that his nervous condition has been worse since May 25, 1943; that at the time he was injured he was a `heater;' that he is not able to do that kind of work now; that he went back to work as a heater in August 1942, and tried to work for two weeks, but couldn't do it; that he has been unable to do that kind of work since; that he was given a job as night watchman at the plant on February 1, 1943, and has been doing this kind of work since; that he was doing this same kind of work prior to May 25, 1943; that he is making just as much to-day as he was in May, 1943; that there hasn't been any change in his earnings since May, 1943. Mrs. Mildred Rhindress was called as a witness and testified in substance as follows: That she is the wife of J. A. Rhindress, and has been married to him for twenty-four years; that up until the time her husband got hurt he could get out and do any kind of manual labor and didn't complain, but since he was hurt he hasn't been able to do what he did before he was hurt; that her husband is nervous and has had nervous spells since he returned *Page 901 
home and started working again. Since May 25th, he suffers more pain, because he gets up with his head back; that the doctor prescribed some kind of little pills and when he gets without them he is more nervous than he was when he has them. His condition is absolutely worse. He has had dizziness and headaches in the morning and a nervous condition constantly since he got back from the operation. Dr. F. C. Mims, called as a witness, testified in substance as follows: That he examined Mr. J. A. Rhindress on July 20, 1943; that he was a well-developed and nourished adult white male about age 45; height, 5 feet, 7 inches. Weight, 185 pounds; scalp: depressed area the size of a half-dollar in right parieto-occipital region. Eyes: wears glasses, otherwise, negative. Ears, nose and throat: negative. Teeth: five missing. Gums: mild pyorrhea. Neck, lungs, and heart: negative. Blood pressure: 126/84. Pulse 76. Abdomen, genitalia, reflexes, and extremities: negative. Urine: specific gravity, 1024. Albumin and sugar: negative. Diagnosis: absence of bone in an area 1 1/2 inches in diameter in the right parieto-occipital region of the vault of the skull, resulting from a comminuted fracture in which the bone was removed by trephining. Headaches, dizziness, and weakness resulting from brain injury. Conclusions: The claimant presents several subjective symptoms, which undoubtedly exist, and which are annoying and capable of temporarily impairing his efficiency. It is not unusual for headaches and dizziness to be present for one to two years subsequent to a skull fracture. In some instances these residuals will persist indefinitely. However, despite these symptoms, this claimant is quite able to engage in light work as a watchman, or pursuing any similar occupation not requiring arduous effort. He presents no objective symptoms except loss of a small portion of bone from his skull. It is quite probable that the headaches, dizziness, and weakness will subside within an additional six months to one year, and possibly disappear entirely. It is his opinion that claimant has a temporary 15% disability, due to impairment of his efficiency by headaches, dizziness, and weakness, resulting from a skull fracture and brain injury sustained July 24, 1942; that maximum improvement will be reached within an additional six months to one year, at which time an examination should be conducted to determine what, if any, permanent partial disability persists; that he had seen Mr. Rhindress *Page 902 
prior to July 20, 1943, on several occasions when he came by his office, but had never examined him until July 20, 1943; that he did not know what his condition was on May 25, 1943; that most of these brain-injury cases get well; that occasionally they find one that is persistent, may be indefinite, may be permanent; that there are various symptoms which might persist indefinitely; that the only objective symptom he was able to find was the absence of the bone over a portion of the skull as a result of the operation; that beyond that, his conclusion and diagnosis is based on subjective symptoms, that is, what the claimant told him; that he had no information about a previous history of the treatment other than what claimant told him; that he had no treatment record, and knew nothing about a previous course of disease; that he saw no reason why his examination would indicate or lead him to believe that claimant's condition had gotten worse since his operation; that it is his belief that the subjective symptoms referred to have continued since the injury and operation. He didn't recall Mr. Rhindress making any statement to the effect that he had gotten much worse, or not. He mentioned that he couldn't do the things now he could before he had the injury. Mr. Rhindress didn't tell him about not being able to do things which he could do before last May. He thought claimant was honest about his subjective symptoms. Dr. Homer S. Swanson, called as a witness, testified in substance as follows: That he is a specialist in neurosurgery; that he has been practicing this type of medicine since November, 1941; that he last examined claimant on August 5, 1943; that as a result of said examination he does not feel that claimant had any disability; that before that he examined him on April 19, 1943; that he did not find any change in his condition between his examination in April, 1943, and his examination on August 5, 1943. At the time he examined claimant in April, 1943, it was his opinion that claimant was grossly exaggerating his complaint, and he could find no objective evidence of dizziness or the nervous system, although there was no way of disproving his history of headache; there is no way to determine the presence or absence of headache; that he was more firmly convinced on August 5, 1943, that there was no evidence of permanent damage to the brain because of the interior wall and on account of the fact of absence of any positive finding other *Page 903 
than the small skull defect; that claimant was admitted to Piedmont Hospital on July 24, 1942, about three hours after he had been struck on the right side of the head with a hammer; that he had been unconscious for five to ten minutes immediately after being struck, but when he saw claimant, he was quite alert and rational, and the only positive findings were the defect of the depressed-skull fracture or the riparianal territory, and in addition there was a skull laceration; that claimant was operated on and a small piece of bone, which was depressed, and which roughly was about the size of the end of the hammer, removed; that claimant did real well and on the fourth day, fussed about going home and finally on the fifth day he was permitted to go home and told to remain in bed a week; that he came back to the office on August 3d, and began to complain of some dizziness and some headache; that on August 12th, he returned again to his office, still complaining of some headache and dizziness; that claimant was readmitted to the hospital on September 26th, where a process of examinations was carried out, consisting of passing on the surgery of the brain to ascertain whether or not there was damage to the brain. All the X-ray films were perfectly normal, showing no evidence of disturbance to cause the persistence of his complaints. Claimant was taken to the operating room and the brain covering removed so as to examine the surface of the brain directly. The brain was found to be normal. This last operation was on October 6th; that he saw claimant three times following and he was still complaining of headache and dizziness — lethargy. On August 5th, there were no new findings as compared with the examination which was carried out on April 19, except that claimant showed two very definite functional twitchings, and some squinting in the right eye. In watching the man it was quite obvious it was a habit, functional spasms of the eye, the other was the presence of tremor, and which, in witness's opinion was functional; that he didn't think the eye twitching had any organic basis; that it has no connection with the injury; that claimant is now beginning to have things which have no organic background; they are entirely mental in origin and not on an organic basis; that he doesn't believe claimant had any disability on August 5, 1943, or has any disability at this time. He takes exception to Dr. Mims's statement that maximum improvement will be reached *Page 904 
in an additional six months or a year. He thinks claimant has reached maximum improvement, and with his now-existing mental attitude about it, probably he will continue to have symptoms for some time. There is no way to say definitely how long. He does not agree with Dr. Mims's 15% disability. It is his opinion that claimant reached maximum improvement prior to April 19, 1942; that claimant complained of a twitching of the eye, and he was sent to Dr. Grady Clay on November 27, 1942, to have his eyes tested to ascertain whether or not there was some refraction which might be playing a part in causing the headaches; that he was fitted with glasses, and there seemed to be some improvement of claimant's headaches with the use of glasses; that he was not wearing glasses in November, 1942.
 "Finding Of Fact
"From the evidence adduced at the hearing, I find as a matter of fact and conclude as a matter of law that the claimant has undergone a change in condition for the worse since May 25, 1943. The record in this case shows that under date of August 10, 1942, the employer and claimant voluntarily entered into an agreement for the payment of compensation by the employer in favor of claimant at the rate of $20 per week, based upon a regular weekly wage of $73, which was the amount of weekly wages claimant was earning at the time of the injury. The record further shows that claimant is now employed by the Atlantic Steel Company in the capacity of watchman at a weekly wage of $27 one week, and $35.10 the next, claimant working forty hours one week, and forty-eight hours the next week. I further find as a matter of fact and conclude as a matter of law that claimant has been unable, as a result of said injury of July 24, 1942, since May 25, 1943, to resume his former occupation as a `heater' or to perform work of a similar nature, and that as a consequence his earning capacity has diminished at least $38.35, which is the difference between $73.45, the amount of weekly wages claimant was earning at the time of his injury, and $35.10, the maximum amount of wages he now earns every other week. Although the testimony of Dr. Swanson conflicts with that of Dr. Mims with respect to the present physical condition of claimant, the claimant stated positively that his physical condition is worse at the present time than it was on May 25, 1943, and no evidence sufficient to rebut *Page 905 
this contention has been introduced. The burden of proving a change in condition for the worse rested with claimant. To my way of thinking, claimant successfully carried this burden. Both doctors concede that the disabilities claimant alleges he is suffering from at the present time are subjective in nature. Dr. Mims stated that it was his belief the claimant was honest in his complaint of physical disabilities and sufferings. My observation of the claimant at the hearing warrants the conclusion on my part that his testimony was conscientious and truthful. Claimant's wife testified that claimant has repeatedly complained in her presence of increased suffering since May 25, 1943. Claimant testified he is now unable to perform the duties he was performing at the time of the injury. No evidence was introduced to rebut this contention. The principles of this fall squarely within the ruling of the Court of Appeals in Austin BrothersBridge Co. v. Whitmire, 31 Ga. App. 560 (121 S.E. 345). I further find that claimant is partially incapacitated to work as a result of said injury of July 24, 1942, and is entitled to receive a weekly compensation equal to one-half the difference between his regular weekly wages before the injury and the regular weekly wages which he is now earning, but not more than $12 per week.
 "Award
"Atlantic Steel Company, employer (self-insurer) will pay to J. A. Rhindress, claimant, compensation at the rate of $12 per week beginning August 6, 1943, and continuing for the statutory period of three hundred (300) weeks, or until there is a change in condition of claimant. The employer is authorized to take credit for the number of weeks compensation heretofore paid, exclusive of the number of weeks involving temporary total disability. And it is so ordered, this the 20th day of August, 1943. State Board of Workmen's Compensation. P. J. Riordan, Deputy Director."
The following essential elements must be shown before the employee can recover an original award under the workmen's compensation act: (1) That there was an "accidental injury;" (2) That it arose out of and in the course of the employment; (3) That he is entitled to compensation in some *Page 906 
amount and what that amount is. A distinction should be drawn between an original award and a previous award, other than the original. The first and second essential elements stated above are sometimes called preliminary adjudications and when adjudicated on the hearing of an application for an original
award are to be taken as res judicata as to the right of the employer and the employee upon the hearing of an application for any subsequent review. If the original award adjudicates that the employee is not entitled to compensation in any amount and no appeal is duly taken therefrom, the doctrine of res judicata applies to the third essential element, and the physical condition of the employee does not remain open for further inquiry, and the case is ended. New Amsterdam Casualty Co. v.McFarley, 191 Ga. 334 (12 S.E.2d 355). On the other hand, if the original award allows compensation in some amount, the doctrine of res judicata, while it applies to the first and second essential elements upon the hearing on any subsequent review, it does not apply to the third essential element, for section 114-709 of the Code, as amended, provides that, "Upon their own motion before judicial determination or upon the application of any party in interest on the ground of a change in condition, the State Board of Workmen's Compensation may, within two years from the date that the board is notified of the final payment of claim, review any award or any settlement made between the parties and filed with the board and, on such review, may make an award ending, diminishing, or increasing the compensation previously awarded or agreed upon, subject to the maximum or minimum provided in this title, and shall immediately send to the parties a copy of the award. No such review shall affect such award as regards any moneys paid." Thus this Code section relieves the parties from the doctrine of res judicata in the particular instances named therein, and the physical condition of the employee remains open for inquiry. Home Accident Ins. Co.
v. McNair, 173 Ga. 566, 570 (161 S.E. 131).
Periodic reviews do not require finality of previous decisions. Hence new hearings may be held where new evidence can demonstrate that there is such a change in condition as provided by the Code, § 114-709. Horovitz on Workmen's Compensation, p. 289 (7). In cases of temporary incapacity the compensation ceases when the employee recovers from the injury, or is earning the *Page 907 
same wage as he was at the time of the injury. Earning the same wage as he was at the time of the injury, regardless of the continuance of physical suffering, terminates his weekly temporary-incapacity rights, but only while earning such former wage (the wage at the time of the injury). Horovitz on Workmen's Compensation, pp. 285 (4) (9), 287 (2, 3); American MutualLiability Ins. Co. v. Hampton, 33 Ga. App. 476
(127 S.E. 155). The undisputed evidence is, and, indeed, it seems to be conceded, that the defendant is not now earning, nor has he earned, such former wage since his injury.
The question to be determined here is not merely whether there was more evidence introduced as to the condition of the claimant on May 25, 1943, but whether, on the review here in question, the whole evidence, including the new, would authorize a finding by the director that the claimant's condition had undergone a change for the worse since May 25, 1943. Moore v.American Mutual Liability Ins. Co., 67 Ga. App. 259 (19 S.E.2d 763); Teems v. American Mutual Liability Ins. Co.,41 Ga. App. 100 (151 S.E. 826). If the true situation be that, after the original award of compensation, the disability of the employee temporarily ceased and the employer obtained a judgment on review ending the compensation, and that thereafter, during the period of limitation, the disability returned, did the legislature intend to prevent the employee from coming before the board and showing the new changes in condition whereby he would be entitled to compensation? We think not. Lumbermen's MutualCasualty Co. v. Cook, 195 Ga. 397 (24 S.E.2d 309); NewAmsterdam Casualty Co. v. McFarley, 191 Ga. 334, 347 (12 S.E.2d 355).
We do not think that the director was attempting to reverse the previous award under the guise of an application for additional compensation based on a change of condition. On the contrary, we think that the director here recognized the binding effect of the last previous award on review that the disability of the employee had temporarily ceased on May 25, 1943, but found, nevertheless, that since that date the disability had returned to such an extent that the employee was entitled to weekly compensation equal to one-half (not the whole) difference between his regular weekly wages before the injury and the regular weekly wages which he is now earning; and to make his findings subject *Page 908 
to the maximum and minimum compensation provided by the workmen's compensation act, the director provided in his award that the compensation should not be more than $12 per week, beginning August 6, 1943, and continuing for the statutory period of three hundred weeks, or until there is a change in the condition of the claimant. Austin Brothers Bridge Co. v. Whitmire, 31 Ga. App. 560
(supra). "The opinion of an expert witness is not conclusive upon the jury. Such testimony is intended to aid them in coming to a correct conclusion upon the subject; but the jury is not bound by such opinion, and can disregard it. The jury may deal with such testimony as they see fit, giving credence to it or not." Manley v. State, 166 Ga. 563, 566 (19) (144 S.E. 170); Liberty Mutual Ins. Co. v. Williams, 44 Ga. App. 452
(161 S.E. 853); City of Atlanta v. Champe, 66 Ga. 659,663; Central Railroad v. Coggin, 73 Ga. 689. The testimony of the physicians, as stated by the director, are in conflict as to whether there had been a change for the worse in the claimant's condition since the last previous award. However, the director was authorized to find from the plaintiff's testimony and the other evidence in the case as a whole, that there had been such a change of condition as found by the director. There was sufficient, competent evidence to support the director's award in favor of the claimant, and the judge of the superior court erred in setting aside the award of the full board, affirming the director's award.
Judgment reversed. Broyles, C. J., and Gardner, J., concur.
 *Page 1