29606. UNITED STATES FIDELITY AND GUARANTY COMPANY *et al. v.* BROWN.

DECIDED NOVEMBER 27, 1942. ON REHEARING, DECEMBER 19, 1942.

710

*Anderson, Anderson & Walker,* for plaintiffs in error.

*Thomas A. Jacobs Jr.,* contra.

MacINTYRE, J. 1. We think the statement of facts in the judgment of the superior court is a fair statement of the evidence, and embraces the material part thereof as it relates to the issues in this case. As to what is referred to by the judge of the superior court in the award of the single director as the "other essential facts" and enumerated as subdivisions 1, 2, 3, and 4, in the judgment of the superior court, we think, with reference to subdivision 1, it might be noted that the employee's eye was hurt or at least that he had gotten sand or cement into it which was giving him trouble or pain, and that the employee told the foreman he was going to a doctor. There was no obligation on the employee to obtain the permission of his employer to select the doctor to give him treatment, for he was at liberty to select any competent or reputable physician that he desired, and the exercise of this discretion would not be an impeaching circumstance.

With reference to subdivision 2: Assuming the claimant, five or six years before the accident or accidents in question, had gotten a sliver or scale in his eye, if "it was a frivolous thing," as he testified, we do not think the failure to remember which eye it was in was such a circumstance as would alone authorize an inference that the claimant was knowingly testifying falsely; but the most that could be said was that it was a mere surmise or conjecture that it, perhaps, might not be entirely in accord with what did happen. If, while riding on a railroad train, one should get a cinder in one or the other of his eyes and, although at the time it was painful and gave him considerable trouble, in a short time thereafter all the ill effects passed away, if five years later he should be asked into which eye the cinder had flown on that occasion and he could not remember, or on account of faulty recollection only, stated the wrong eye, we do not think that the witness's entire testimony should be disbelieved.

With reference to subdivision 3: Dr. Solomon, the physician of the employer, did not see the employee until February 24, 1941, which was after the second accident during the employment in question, the former accident having occurred approximately a month previously. The claimant told Dr. Solomon about the accident in 1935 or 1936, which had occurred while in the employment of a former employer; but about the accident of January, 1941, the claimant testified, "I believe I told him about it. I wouldn't say positively I did." It seems to us that this should not be regarded as a serious impeaching circumstance as to the witness, because he told the employer's doctor about the accident which would have militated against his case if he had contemplated filing an untrue claim for compensation and failing to mention the previous accident that had happened only a month before which would have aided his case.

With reference to subdivision 4: The claimant went to an eye specialist on the recommendation of the employer's doctor, Dr. Solomon, but finally, on his own initiative, he went back to Dr. Brown in Alabama who had treated his eye for the sand and cement injury. We do not think this could be construed as an impeaching circumstance with reference to the witness.

The only part of the testimony of Dr. McLaughlin, the eye specialist, that could be said to materially refute the positive testimony of the claimant that he had good vision in both eyes, and began to lose his sight only in the eye in question after the accident of January, 1941, was as follows: Q. "What was your opinion as to this scar that you found on his eye?" A. "My impression of it was he had an old scar that had healed or partially healed over, and either partially healed or broken down again, because part of the lesion was scar formation and the other part was ulceration. . . He stated he didn't want to make this a compensation case and in fact he paid for his visit when he came in. For that reason I didn't make out any compensation forms on it because it didn't seem clear to me it was a compensation case. . ." Q. "[Dr. McLaughlin], you don't mean to say this man didn't get an injury sometime the latter part of January that caused the condition you found?" A. "It is possible for that to have taken place. . ." Q. "You did see irritation and some infection in the eye when he came to you?" A. "Yes, sir, there was a definite inflammatory condition there."

It is disclosed by the record that both the claimant's attorney and the defendant's attorney thought extremely well of Dr. McLaughlin as an eye specialist of the highest ability. Dr. McLaughlin was apparently not examining the eye of the claimant for the purpose of endeavoring, as a specialist, to determine whether the scar was brought about by the accident of January, 1941, or the accident of 1935 or 1936; and he seems to us to have been seeking to determine the present condition of the eye (at the time he examined it), in order to give it the proper treatment at that time, and he seems to us to have been very careful not to give any positive or definite opinion as a medical expert on the question of which of the said accidents caused the scar on the eye. The doctor did not give his expert opinion on a hypothetical question asked him, based on the facts disclosed by the evidence, as to which of these accidents caused either the scar or the blindness. Indeed it seems to us he stated that either might have caused the scar or the blindness and stopped "right there," not going any further. If this be correct, the testimony was a mere explanation, based on the same proof with equal probability that the scar would be attributable to either of the accidents, to wit, the one in 1935 or 1936, or the one in January 1941. A different question would be presented if the doctor had gone further and testified, from his examination of the eye, or from a proper hypothetical question reciting facts disclosed by the testimony, that in his professional opinion the scar or blindness had been caused by the accident in 1935 or 1936, and not by the accident of January, 1941. This would have been additional evidence as it related to the accident of 1935 or 1936, which differentiated it from the evidence as it related to the accident of January, 1941. Then the director would have been authorized to select the theory that the injury resulted from the accident of 1935 or 1936. The defendant offered only two witnesses, Dr. Solomon and Dr. McLaughlin, and, in the absence of a definite expert opinion of the doctor, based on the proper examination of the wound, or based on a hypothetical question properly framed, there can be no selective application of the theory that the proximate cause of the injury was the accident of 1935 or 1936. The principle stated with reference to Dr. McLaughlin's testimony as applied to this case is likewise applicable to the testimony of Dr. Solomon, the only other witness for the defendants. The entire

714

evidence did not indicate a logical sequence of cause and effect which would be the basis for the finding of the single director, notwithstanding his theory may have been plausible. This finding was affirmed by the board. Southern Ry. Co. v. Dickson, 211 Ala. 481 (100 So. 665). The claimant testified the sliver or scale from the instrument was removed from his eye, and from that time he had no trouble with his eyes until his left eye was injured as above stated. "I had good vision out of both eyes." This finding of the single director and the Industrial Board, being based on conjecture only, can not be upheld, and the judge of the superior court did not err in recommitting the case to the Industrial Board for further proceedings not inconsistent with his judgment.

2. Other headnotes not specifically dealt with in the opinion do not require elaboration.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*

ON MOTION FOR REHEARING.

MacINTYRE, J. We are of the opinion that the judge of the superior court properly recommitted the case to the Industrial Board, and the judgment of affirmance is adhered to; but we direct that it be recommitted to the Industrial Board for a full reconsideration and rehearing, and not merely for the limited purpose of having the board determine the amount of compensation. *Bituminous Casualty Co.* v. *Dyer, 62 Ga. App.* 279, 283 (7 S. E. 2d, 415); *Whitfield* v. *American Mutual Liability Insurance Co., 44 Ga. App.* 478 (162 S. E. 297); *Hartford Accident & Indemnity Co.* v. *Cox,* 191 *Ga.* 143 (11 S. E. 2d, 661), s. c. 63 *Ga. App.* 763 (12 S. E. 2d, 110); *Austin Brothers Bridge Co.* v. *Whitmire, 31 Ga. App.* 560, 567 (121 S. E. 345).

*Judgment affirmed, with direction. Broyles, C. J., and Gardner, J., concur.*