29638. LUMBERMEN'S MUTUAL CASUALTY CO. *et al. v.*
COOK.

DECIDED MARCH 19, 1943.

*Gambrell & White,* for plaintiffs in error.

*T. E. Whitaker,* contra.

SUTTON, J.   R. C. Cook was injured on October 28, 1939, while operating a truck for his employer, the Atlanta Baking Company. A written agreement for compensation of $12.50 per week, entered into between him and his employer and its insurance carrier, Lumbermen's Mutual Casualty Company, was made an award of the Industrial Board under date of November 20, 1939, payments to commence as of November 4, 1939.   On November 18, 1939, the claimant resumed his employment at his former salary of $25 per week, compensation having been paid him for two weeks, and he continued in his employment through February 28, 1940.   On January 2, 1940, he filed an application with the Industrial Board for a hearing "to determine liability of medical expense for ear." After a hearing on January 15, 1940, before a single director an award was made reciting: "The evidence discloses that claimant has entirely recovered from the accidental injury, is suffering no disability or loss of hearing in his left ear, and his only trouble at this time is disfigurement.   Further medical or surgical treatment is not necessary to relieve disability.   Therefore compensation is

denied, and the claim for compensation is hereby dismissed." No appeal was taken from this adverse award. On May 23, 1941, the claimant made an application for a hearing for compensation, on account of a change in his condition. After a hearing before a director an award was made in favor of the claimant, allowing compensation for total disability of $12.50 per week for 43-2/3 weeks from March 1, 1940, and compensation thereafter for partial disability of $6.50 per week for 239-1/3 weeks. Upon appeal to the superior court by the employer and insurance carrier the award was affirmed, and the appellants excepted on grounds hereinafter mentioned.

The evidence on the hearing before the director was substantially as follows: The claimant had for several years followed an occupation as a truck-driver. On October 28, 1939, while driving a truck for his employer, Atlanta Baking Company, he sustained an injury which almost completely severed his left ear. He was taken to a hospital, where the outer portion or "trumpet" was entirely removed. After an award on November 20, 1939, approving an agreement entered into by all parties concerned, he was paid compensation for two weeks at $12.50, one half of his weekly wage of $25; and on November 18, 1939, he returned to his work at his former salary, and no further compensation was paid. After working through February 28, 1940, and having caught a cold, it was suggested by his employer that he take a rest; and thereafter he constantly sought to return to his employment, but was unable to be reinstated, and was unsuccessful in finding employment elsewhere as a truck-driver. After a period which he "imagined" was about ten months, he found employment at a filling-station operated by Crawford & Mitchell. The manager of the filling-station testified that the exact date when the claimant went to work was September 18, 1940. According to the claimant he had reached the conclusion that his inability to obtain employment as a truck-driver was because of the fact that the loss of his left outer ear or trumpet was obvious and his fitness as a truck-driver destroyed, and that in fact his hearing was marred, in that he could not distinguish at times from which direction sound came. In respect to this disability, a truck-driver of many years experience testified that in his opinion one with an impaired hearing could not safely drive a truck, and that a defect in his own hearing had caused him to

abandon driving. A surgeon who attended the claimant after his outer ear or trumpet had been removed testified that he was not a specialist, but that in his opinion the scar tissue which had formed in the claimant's ear near the entrance had, by contracting, reduced the size of the ear channel and prevented a proper discharge of certain secretions, resulting in a stoppage, discomfort, odor, and reduced hearing until the ear was cleaned of such stoppage, which cleaning, the claimant testified, was necessary several times a day, and which secretion he referred to as "pus." While the witness testified that he had not noticed any difficulty on the part of the claimant in understanding him in conversations, the claimant testified that he had difficulty in hearing others at times; and his wife testified that his hearing was worse, and that he sometimes had to ask her two or three times what she was saying to him, before she could get him to understand. The manager of the filling-station testified that sometimes the claimant would ask the second time what he had said to him. At this filling-station the claimant worked through January 31, 1941, at $15 per week, though he received several bonus payments in the sums of $2, $10, and $15, and he was subject to be charged for any shortages for which he was responsible. He was discharged for the offense of sleeping while on duty, and remained out of work until April 1, 1941, when he went to work in the planing-mill of Campbell Coal Company, where he was still employed on the date of the hearing on June 30, 1941, making a regular wage of thirty cents an hour for forty hours of work per week.

The director found, that the award of January 15, 1940, denying compensation and medical treatment was not res judicata, and that the claimant was not barred from filing his application, on May 23, 1940, for compensation on account of a change in his condition; that the evidence was sufficient to show that the claimant had received a permanent injury consisting of a punctured or damaged ear drum, which caused the ear to secrete "corruption" or pus; that the scar tissue around the ear hole had caused the external ear hole to become much smaller than normal, barely admitting at the time of a hearing the end of a lead pencil, and that there was a loss of the entire external ear flush with the head; that these three specific injuries combined to cause both a material impairment of the hearing in the ear and a confusion in locating

sound direction; that the evidence was sufficient to show that these injuries created an incapacity to perform the same kind of service which the claimant performed before the accident, to wit, the safe driving of an automobile or a truck and sales promotion work; that the claimant was totally incapacitated by reason of inability to procure employment from the time he left Atlanta Baking Company until he began work with Crawford & Mitchell, which the director estimated at ten months; that on April 1, 1941, the claimant obtained employment with Campbell Coal Company at a reduced wage of thirty cents an hour for forty hours work; and that as of January 1, 1941, he has suffered a permanent partial disability in his earning capacity. From 300 weeks for payment of compensation the director found that 2 weeks should be deducted for the time in which the claimant was paid compensation at $12.50 per week; 3 months, or 15 weeks, should be deducted for the time in which the claimant was idle after leaving Crawford & Mitchell, having been discharged because of his own misconduct; leaving compensation to be paid for the remaining 273 weeks as follows: Temporary total compensation at $12.50 per week for 43-1/3 weeks (evidently estimated by the director as being the time between the date when the claimant left Atlanta Baking Company, February 28, 1940, and the date when the director found he went to work for Crawford & Mitchell, as being January 1, 1941, when in fact it was September 18, 1940), and permanent partial disability from January 1, 1941, for 239-1/3 weeks.

The appellants assigned as error: (1) That the superior court erred in failing to reverse the award of the director because there was not sufficient evidence to show a change of condition. (2) The award of January 15, 1940, was res judicata as against the right of the claimant to apply for compensation on May 23, 1941, on account of a change in condition. (3) The Industrial Board was without jurisdiction to entertain the claim of the employee after the award of January 15, 1940, denying compensation and medical aid. (4) The superior court erred in failing to remand the case to the Industrial Board with direction to revise the award, on the ground that there was not sufficient evidence to sustain the director's finding that the claimant was totally disabled for a period of ten months following March 1, 1940; and because the director failed to give consideration to earnings received by the claimant

during the period in which the director found him to have been totally disabled, and the award should be modified to give effect to the uncontradicted evidence of the claimant's earning capacity during the period involved in the award.

■ This court certified to the Supreme Court the question whether or not, under the facts of this case, the award of January 15, 1940, denying compensation was res judicata as to the right of the claimant to apply for compensation on May 23, 1941, on account of a change in his condition. In answering the question the Supreme Court, in *Lumbermen's Mutual Casualty Co.* v. *Cook*, 195 *Ga.* 397 (24 S. E. 2d, 309), ruled that in the application of January 2, 1940, the claimant did not seek an adjudication awarding compensation generally, but that the application was confined solely to the question of further medical expense under the Code, § 114-501, as amended by the acts of 1937 (Ga. L. 1937, pp. 230, 233, 528, 532); that the Industrial Board could adjudicate only such matter then before it on January 15, 1940; and that as the award of November 20, 1939, had determined that the claimant was entitled to compensation, the board was without authority again to adjudicate that question. The court held: "Where the parties agree upon compensation to be paid to an injured employee, and the Industrial Board approves the agreement, the board has authority, within the time prescribed by law, to hear and determine an application by the employee for additional compensation on the ground of a change in his condition. The denial by the board of the employee's application for medical aid, subsequently to the approval by the board of the original agreement of the parties, is not res judicata on the matters presented by the petition for review, and does not bar the employee's right to such review." Under the decision of the Supreme Court the contention of the plaintiffs in error that the Industrial Board was without jurisdiction to entertain the claim of the employee, on May 23, 1941, for compensation on account of a change in his condition, is without merit, the award of January 15, 1940, not being res judicata in this respect.

■ Compensation payable to the claimant under the workmen's compensation act is not governed in this case by the Code, § 114-406, inasmuch as that section relates to loss of bodily members and loss of hearing in *both* ears; and it has been held that an ear is not embraced in the term "member." *Travelers Insurance Co.*

v. *Albin*, 33 *Ga. App.* 666 (127 S. E. 804). Whatever compensation the claimant is entitled to must be determined by § 114-404, relating to total incapacity, and § 114-405, relating to partial incapacity. "The incapacity for work resulting from such an injury [as is compensable under the workmen's compensation act] is total not only so long as the injured employee is unable to do any work of any character, but also while he remains unable, as a result of his injury, either to resume his former occupation or to procure remunerative employment at a different occupation suitable to his impaired capacity. Such period of total incapacity may be, and usually is, followed by a period of partial incapacity, during which the injured employee is able both to procure and to perform work at some occupation suitable to his then-existing capacity but less remunerative than the work in which he was engaged at the time of his injury. The situation determines the period of his partial incapacity. Except as specifically provided in section 32 of the act [Code, § 114-406], such partial incapacity terminates when the employee again becomes capable of earning the same wage he earned before the injury, whether at the same or at a different occupation, and without regard to such personal inconveniences as may result to him solely from his injury and are not caused or aggravated by his new employment. Before an employer can claim a reduction of compensation under the provisions of section 33 [Code, § 114-407], it must appear that the injured employee has refused employment procured for him suitable to his then-existing capacity." *Austin Bridge Co.* v. *Whitmire*, 31 *Ga. App.* 560, 566 (121 S. E. 345). The Code, § 114-407, above referred to, provides: "If an injured employee refuses employment procured for him suitable to his capacity, he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Department of Industrial Relations [now the State Board of Workmen's Compensation] such refusal was justified." In *Blue Bell Globe Mfg. Co.* v. *Baird*, 61 *Ga. App.* 298, 300 (6 S. E. 2d, 83), it was said: "Loss of earning power is the basis for an allowance of compensation. Incapacity has been said to exist by reason of inability to procure employment as well as incapacity to perform the service. Compensation under the workmen's compensation act depends on diminution of earning capacity. The word 'disability' as used in the act means impairment of earning capacity."

The amount of compensation to be paid to an injured employee is to be computed on the basis of the regular wage received by him on the date of the accident. *McBrayer* v. *Columbia Casualty Co.,* 44 *Ga. App.* 59 (160 S. E. 556); *Georgia Power Co.* v. *McCook,* 48 *Ga. App.* 138 (172 S. E. 78); *Carter* v. *Ocean Accident &c. Corporation,* 190 *Ga.* 857, 858 (11 S. E. 2d, 16). Under the Code, § 114-404, an injured employee shall receive for total incapacity a weekly compensation equal to one half of his regular wage at the date of the accident, but not more than $15 per week nor less than $4 per week, except when the weekly wage is below $4, when the regular wage on the date of the accident shall be the weekly amount paid; and in no case shall the period covered by such compensation be greater than 350 weeks, nor shall the total amount of compensation exceed $5000. Under § 114-405 the employee, except as provided in § 114-406, which is not applicable here, shall receive for partial incapacity a weekly compensation equal to one half the difference between his regular weekly wage at the time of his injury and the regular weekly wage which he is able to earn thereafter, but not more than $12 a week; and in no case shall the period covered by such compensation be greater than 300 weeks from the date of the injury. In case the partial incapacity begins after a period of total incapacity, the latter period shall be deducted from the maximum period allowed for partial incapacity, and the total compensation shall in no case exceed $5000.

Having stated the above provisions of law, we now examine the facts of the case for the purpose of applying them. The director was authorized to find from the evidence, that the employee, after being paid for two weeks at $12.50, or one half of his regular weekly wage of $25, returned to his employment with Atlanta Baking Company at his former wage, and worked there through February 28, 1940; that from that date until he obtained employment with Crawford & Mitchell he was unable to find work as a truck-driver, and did not refuse any work; that on January 31, 1941, because of his own fault, he was discharged, and was not entitled to compensation for the period intervening until he obtained employment on April 1, 1941, with Campbell Coal Company; that he was entitled to compensation for total incapacity from the time he left Atlanta Baking Company until his employment with Crawford & Mitchell; that he was entitled to compensation for partial inca-

pacity from the time he went to work for that company, such compensation to be paid for 300 weeks less the following deductions: the period of two weeks for which he was paid compensation before he returned to his employment with Atlanta Baking Company; the period during which he remained with that company after returning to work on November 18, 1939; the period of idleness because of his discharge for sleeping while on duty with Crawford & Mitchell; and the period of total incapacity. The director found as above, but in making the award in favor of the claimant he failed to make a deduction for the period of idleness mentioned. He found that the claimant should be paid for total incapacity for 43-2/3 weeks, calculated as being from March 1, 1940, to January 1, 1941, the director having found that the claimant was out of employment from the day he left Atlanta Baking Company until he went to work for Crawford & Mitchell, which the director fixed as January 1, 1941. He also found that the claimant was entitled to compensation of $6.50 per week, being one half of the difference between his former wage of $25 per week and a reduced wage of $12 per week, payable for 239-1/3 weeks from January 1, 1941, the date he found the claimant went to work for Crawford & Mitchell, the number of 239-1/3 weeks being arrived at by deducting from a total of 300 weeks the following: (a) two weeks for which he was paid compensation before he returned to his employment with Atlanta Baking Company; (b) 15 weeks for which he received his regular wage of $25 per week with Atlanta Baking Company; (c) 43-2/3 weeks as being the time for which, as found by the director, the claimant should be paid for total incapacity. These periods totaling 60-2/3 weeks when deducted from 300 weeks left a difference of 239-1/3 weeks for which the director found that the claimant should be paid compensation for partial incapacity.

The director erred in his findings in the following particulars: In calculating the period of unemployment after the claimant left Atlanta Baking Company until he went to work for Crawford & Mitchell, he used ten months or 43-2/3 weeks. While it is true that the claimant testified that he "imagined" such period of unemployment was about ten months, he did not definitely fix any date as to when he began work with Crawford & Mitchell. On the other hand, the manager of that company stated that the date of employment was September 18, 1940. In view of this positive tes-

timony we do not think that the testimony of the claimant should be treated as contradictory or raising any real issue as to the date when he went to work for Crawford & Mitchell. Consequently such period of unemployment for which the claimant should be paid for total incapacity at $12.50 per week, being one half of his former regular weekly wage of $25, should be figured as being from March 1, 1940, when he left Atlanta Baking Company, to September 18, 1940, when he went to work for Crawford & Mitchell, making 28 weeks instead of 43-2/3 weeks. The period of idleness between his employment with Crawford & Mitchell and Campbell Coal Company, from February 1, 1941, to April 1, 1941, was fifty-nine days or approximately eight weeks. It follows that the award on the basis of the evidence should have been made as follows: Allow compensation for total incapacity for 28 weeks at $12.50. Allow compensation for partial incapacity for 300 weeks, less the following deductions: (a) two weeks for which the claimant was paid compensation before he returned to work with Atlanta Baking Company; (b) 15 weeks as the period in which he worked with that company and received his full wage of $25; (c) 28 weeks as the period for which he should be paid as for total incapacity, representing the period between his employment with Atlanta Baking Company and that with Crawford & Mitchell; (d) eight weeks as the time in which he was idle, through his own fault, before beginning work with Campbell Coal Company. Deducting the total of these periods, 53 weeks, from the maximum total of 300 weeks leaves 247 weeks, for which the claimant was entitled to compensation for partial incapacity. The director also erred in fixing $6.50 as the amount of compensation to be paid each week for partial incapacity. Of the 247 weeks for which the claimant should be paid for partial incapacity from September 18, 1940, when he went to work for Crawford & Mitchell, receiving $15 per week, compensation should be figured for 19 weeks at $5 per week, being one half of the difference between his former wage of $25 per week and the wage he was paid by Crawford & Mitchell. At Campbell Coal Company he worked at a regular weekly wage of $12, being 30 cents an hour for 40 hours. One half of the difference would be $6.50 per week, to be paid for partial incapacity for 247 weeks, less the above-mentioned 19 weeks, or for 228 weeks.

Summarizing, the award should be as follows: Compensation for

total incapacity, 28 weeks at $12.50; compensation for partial incapacity, 19 weeks at $5 per week, and 228 weeks at $6.50 per week, to be paid as from September 18, 1940, the date when the claimant went to work with Crawford & Mitchell at reduced wages. The total amount to be paid under such an award would be $1927, all accrued compensation to be paid immediately. Under the award of the director the total to be paid would be $2101.49, all accrued compensation to be paid immediately. While under the evidence the claimant was entitled to compensation, in part as for total incapacity and in part as for partial incapacity, the award as rendered was incorrect for reasons above shown. It follows that the claimant is entitled at this time, on March 16, 1943, to be paid compensation which has accrued as follows: for total incapacity, 28 weeks to September 18, 1940, at $12.50 per week, $350; for partial incapacity, 19 weeks to January 30, 1941, at $5 per week, $95, and 107 weeks to March 16, 1943, at $6.50 per week, $695.50; making a total of $1140.50. From this date, March 16, 1943, for the remaining period of 121 weeks (228 less 107) the claimant is entitled to be paid at $6.50 per week, or $786.50, under his present condition of partial incapacity.

The judgment of the superior court affirming the award of the Industrial Board is reversed, with direction that it remand the case to the Industrial Board with instruction that the award of the director be modified in accordance with this decision.

*Judgment reversed, with direction.* *Stephens, P. J., and Felton, J., concur.*