31416. HARTFORD ACCIDENT & INDEMNITY COMPANY *v.* SUTTON.

DECIDED MARCH 15, 1947.  REHEARING DENIED MARCH 26, 1947.

*T. Elton Drake, Anderson, Connerat, Dunn & Hunter,* for plaintiff in error.

*William A. Wells Jr.,* contra.

BROYLES, C. J. (After stating the foregoing facts.) The evidence shows that on the day after the claimant's accident he was sent by his employer to a hospital in Savannah, Georgia, where he was given some preliminary treatment by the employer's physician; and that on the same day the employee, without the consent and against the medical advice of the employer's doctor, left the hospital and went to a hospital at Metter, Georgia, where he was treated by his own physician, Dr. Kennedy.

The director found from a preponderance of the evidence that the claimant left the hospital at Savannah and elected to be treated at Metter by his own doctor, without the approval of the employer or its insurer, or of the State Board of Workmen's Compensation, and "that the employer has met all requirements as anticipated under § 114-501 of the statute, in that they immediately furnished adequate medical [services] and hospitalization to the claimant. The question of the claimant's leaving the Central of Georgia's hospital of his own accord and going to Metter, Georgia, and entering a hospital there of his own choice and seeking a physician of

his choice does not constitute an emergency as defined in the above Code section [Code Ann. Supp., § 114-501], and the employer or the insurer would not be liable for the expenses therefor." That portion of the award was reversed by the judge of the superior court, and we think that judgment was error. In our opinion, the act of 1937 (Ga. L. 1937, p. 528; Code Ann. Supp., § 114-501) is not in conflict with the director's ruling in this case. On page 533 of the act it is stated: "If in an emergency on account of the employer's failure to provide the medical or other care as herein specified, a physician other than provided by the employer is called to treat the injured employee, the reasonable cost of such service shall be paid by the employer if so ordered by the Department of Industrial Relations." In this case there was no emergency and no order of the department.

The only question here involved is whether that portion of the award was authorized by the evidence. In *United States Fidelity &c. Co.* v. *Brown,* 68 *Ga. App.* 706 (23 S. E. 2d, 443), cited in behalf of the claimant, the question here presented was not there involved. In that case the board *had denied Brown any compensation,* and gave as one reason therefor that he had secured medical treatment from his own physician, without the permission of his employer, and this court held: "There was no obligation on the employee to obtain the permission of his employer to select the doctor to give him treatment, for he was at liberty to select any competent or reputable physician that he desired, and the exercise of this discretion would not be an impeaching circumstance." In that case there was no question as to whether the employer was liable for the expenses of Brown's own physician.

In the instant case, the evidence amply authorized the entire award of the director; and the judge of the superior court erred in reversing the portion of the award referred to.

*Judgment reversed. Sutton, P. J., and Felton, J., concur. Gardner, J., concurs in the judgment. MacIntyre and Parker, JJ., dissent.*

MacIntyre, J., dissenting. This case is in this court by virtue of a fast bill of exceptions by Southeastern Shipbuilding Corporation, the employer, and Hartford Accident & Indemnity Company, the insurance carrier, complaining of a judgment of the Superior Court of Chatham County, which, on appeal, reversed in

part the ruling of director Harry E. Monroe. Director Monroe rendered an award allowing the claimant, Lundy Sutton, compensation as of July 30, 1945, at the rate of $20 per week, to continue until November 15, 1945; the director did not allow compensation for the claimant's medical and hospital expenses. The Superior Court of Chatham County reversed that portion of the award by the director which disallowed the medical and hospital expenses. The facts relative to the medical treatment are not in dispute.

The claimant suffered a bilateral hernia as a result of an injury sustained out of and in the course of his employment with Southeastern Shipbuilding Corporation. The defendant offered to provide prompt and adequate medical attention and made arrangements for the claimant to be hospitalized for the purpose of treating the injury, in the manner prescribed in the Code, § 114-412. The claimant went to the hospital selected by his employer on the day after the accident, arriving there during the morning. The claimant left the hospital around 5 o'clock in the afternoon of the day he was admitted. During the time he was in the hospital a nurse took his temperature, and the house doctor examined him. The physician employed by the insurance carrier testified that he had expected to arrive at the hospital around 6 o'clock that evening to examine the claimant. The claimant went to his home in Savannah and notified an agent of the insurance carrier that he was going to his own doctor at Metter, Georgia. The claimant went to his own doctor and underwent the prescribed operation in the hospital owned by the claimant's doctor and incurred an expense of $353. The operation was a success, and the expense incurred for hospital and medical care was reasonable and customary.

The point involved in this appeal is whether an injured employee has a right to secure medical treatment from his own physician, or must submit to treatment by the physician selected by his employer or insurance carrier. We will first consider the question of whether or not an employee has a right to select his own physician at his own expense; that is, if he selects his own physician after the employer has furnished or offered to furnish a physician at the employer's expense, does he do so at his peril and must he bear the expense of the doctor so selected by him?

In *United States Fidelity and Guaranty Co.* v. *Brown, 68 Ga. App.* 706, 711 (supra), the employer had furnished a doctor, and

the claimant Brown, without the consent of the employer, went to his own personal physician, paid such physician himself and sought no recovery for the services of his physician. The hearing director denied the claimant compensation and refused to accept the version of the accident given by the claimant, for several reasons, one being that the claimant went to his personal physician and paid such physician himself after the company had offered to furnish one without cost. In his written opinion in the *Brown* case, the judge of the superior court stated that the fact that the claimant had hired his physician and paid him himself in no way cast suspicion upon the case of the claimant as stated by the hearing director in his finding. In discussing this matter in division one of the opinion in the *Brown* case, we expressly and specifically referred to the statement of facts on the preceding page which contains this phase of the opinion of the superior court judge, and relative to it said that "there was no obligation on the employee to obtain the permission of his employer to select the doctor to give him treatment, for he was at liberty to select any competent or reputable physician that he desired, and the exercise of this discretion would not be an impeaching circumstance." In the instant case, the plaintiff in error states that, as applied to the facts of the *Brown* case, "this theory of law is sound. There is no reason why the claimant should not go to any doctor, even to Johns Hopkins or Mayo's, if he desires to defray his own expenses. In the case at bar, we are concerned with who will pay the bills incurred by the claimant for a doctor and hospital of his choice, when the employer has provided competent and adequate medical treatment for him which he refused to accept." In the *Brown* case, the claimant selected and paid his own doctor and had not sought a recovery for such doctor's fees. The question of collecting the doctor's bill was not involved in the *Brown* case. The quotation from the *Brown* case was made with reference to the question as to whether the claimant's hiring and payment of a doctor was, under the facts of that case, an impeaching circumstance in or cast a shadow on the claimant's case. We there stated that such action by an employee would not be an impeaching circumstance.

We will now discuss the question as to whether, under the facts of this case, the employee is entitled to the statutory allowance of medical, surgical, and hospital treatment, where he employed his

own family physician for a hernia operation after the employer had offered to furnish him medical, hospital, and surgical services for an operation of this character. The operation was successful, and within the provisions of the statute; the cost was reasonable and within the $500 limitation.

The Code, § 114-501, as it existed in 1920, stated that "the employer shall furnish, or cause to be furnished, free of charge to the injured employee, *and the employee shall accept* [these words were eliminated by act of 1937], such necessary medical attention as the nature of the accident may require." (Italics ours.) The act of 1937 (Ga. L. 1937, p. 528; Code, Ann. Supp., § 114-501) amended the above Code section by striking the original section and substituting other language therefor which provides as follows: *"Medical, surgical, hospital, and other treatment, in amount not to exceed $500, including medical and surgical supplies as may reasonably be required for a period not exceeding 10 weeks from date of injury to effect a cure or give relief and for such additional time as in the judgment of the State Board of Workmen's Compensation will tend to lessen the period of disability, and in addition thereto such original artificial members as may be reasonably necessary at the end of healing period shall be provided by the employer.* In case of a controversy arising between the employer and the employee relative to the continuance of medical, surgical, hospital, or other treatment, the Board may order such further treatments as may in the discretion of the Board be necessary.

"The Board may at any time upon request of an employee order a change of treatment and designate other treatment suggested by the injured employee subject to the approval of the Board, and in such a case the expense thereof shall be borne by the employer upon the same terms and conditions as hereinbefore provided in this section for medical and surgical treatment and attendance.

"The refusal of the employee to accept any medical, hospital, surgical, or other treatment when ordered by said Board shall bar said employee from further compensation until such refusal ceases, and no compensation shall at any time be paid for the period of suspension unless in the opinion of the Board the circumstances justify the refusal, in which case the Board may order a change in the medical or hospital service.

"If in an emergency on account of the employer's failure to pro-

vide the medical or other care as herein specified, a physician other than provided by the employer is called to treat the injured employee, the reasonable cost of such service shall be paid by the employer if so ordered by the Board. (Acts 1937, pp. 230, 233, 528, 532; 1943, pp. 167-169.)"

The last paragraph of this section states a rule for allowing the "reasonable cost" for the medical treatment as is reasonably required when an emergency occurs, whether the cost be more or less than the "$500" limitation, if ordered by the board, and such rule is one of the several exceptions to the general rule which limits such costs to such medical treatment not to exceed the $500 limitation in the absence of any order by the board. If such emergency occurs, this paragraph is applicable, but not otherwise. It is not here applicable.

Ordinarily, where an employee who comes under the provisions of the Workmen's Compensation Act is injured, relative to his medical and other treatment, the italicized part of Code (Ann. Supp.) § 114-501, is applicable. This is the general rule and is stated in the first sentence thereof. The other parts of such section refer to and only become applicable to the cost of treatment when the board passes an order relating to the special set of circumstances stated in such section. In the instant case, no order of the board had been passed relative to any situation which had arisen under this section. Thus only the general rule which is stated in the first sentence of such section is applicable in this case. Hence, we will discuss only the first sentence of such section which has been italicized in this section quoted above.

It will be noted that the part of Code, § 114-501, as it existed in 1920 before this amendment, stated that the employer should furnish free of charge *and the employee shall accept* such necessary medical attention as the nature of the accident may require. The italicized words, it seems to us, were significantly omitted in the act of 1937.

This court in *Bituminous Casualty Co.* v. *Dyer, 62 Ga. App.* 279 (7 S. E. 2d, 415), held that, "In order to be barred from receiving compensation for refusal of a tendered operation, the operation must first be ordered by the Industrial Board, and nowhere in the record does it appear that any such order was ever made. The record does disclose that the claimant was being treated by a qual-

ified physician during the entire time of his disability, and there was no refusal on his part to accept either treatment or an operation."

In *United States Fidelity & Guaranty Co.* v. *O'Byrne,* 61 *Ga. App.* 806 (7 S. E. 2d, 689), this court construed the first paragraph of Code, § 114-501, to mean that the Department of Industrial Relations has the power to order the payment of medical expenses after they have been incurred for a period exceeding ten weeks. The court pointed out that the department may order such treatment as may in the discretion of the department be necessary. *City of Atlanta* v. *Padgett,* 68 *Ga. App.* 96 (22 S. E. 2d, 197).

It seems to us that the act of 1937 (Code Ann. Supp., § 114-501), which makes it the duty of the employer to furnish medical, surgical, and hospital treatment, has two purposes: (1) to effect a cure and give relief to the injured employee so as to reduce the time or extent of his incapacity which would of course inure to the benefit of the employer by reducing the time or amount for which the employer would have to pay compensation; and (2) a humanitarian and just purpose which inures to the benefit of the employee by effecting the cure of the injury and giving such relief to the injured employee as is possible.

We think that the act intends to protect the employer from any loss that might result because of the employee's refusal to accept the tendered services, but not to penalize the employee for exercising the important privilege of employing his own physician. However, by so doing the employee assumes the responsibility for his own treatment and must bear any loss resulting from neglect or lack of skill therein. *Neary* v. *Philadelphia Coal & Iron Co.,* 264 Pa. 221 (107 Atl. 696).

It might be noted that in a serious operation, notwithstanding the fact the employer wished to hasten the time of recovery and, acting in the utmost good faith with his employee, might obtain the services of a physician for less cost than the employee who was likewise acting in the utmost good faith, the employer's loss at most would be only in money and ordinarily not of a great amount, for the charges would be limited to "such charges as prevail in the same community for similar treatment of injured persons of a like standard of living when such treatment is paid for by the injured

32

persons;" and under no circumstances more than $500 unless authorized by the board. While a mistake by the employer in selecting a physician might result in neglect or a lack of skill which might produce temporary or permanent aggravation of the injury or loss of life or limb, yet the Workmen's Compensation Law provides that "the employer shall not be liable in damages for malpractice by a physician or surgeon furnished by him pursuant to the provisions of this section, but the consequences of any malpractice shall be deemed part of the injury resulting from the accident, and shall be compensated for as such." Code, § 114-502; *McConnell* v. *Hames,* 45 *Ga. App.* 307 (164 S. E. 476).

It having been repeatedly announced by the courts of this State that the Workmen's Compensation Act should be liberally construed in favor of the employee, so construing it we think that where, as here, the operation for hernia might involve such serious consequences he should not be unqualifiedly required to accept the physician selected by the employer, but should have the option under the restrictive rules of the Workmen's Compensation Act to select his personal physician.

In discussing the question whether the employee had the right and option to accept the physician tendered by the employer or select one of his own choice, it was said in Lading *v.* Duluth, 153 Minn. 464 (190 N. W. 981), that "we are of opinion that the statute should not be construed to impose upon the employé the unqualified obligation to accept the physician selected by the employer, or forfeit the right of reimbursement there given. It often happens, a situation perhaps more or less general, that the employé has a family physician to whom he prefers to turn in case of injury or sickness, rather than to accept the services of another with whom he has no acquaintance, or in whom perchance he has no confidence. In that situation he should have the option or unquestioned right to choose his medical attendant or accept the one tendered him by the employer, but within the limits of liability on the part of the employer imposed by the statute;" the limits of liability there being "not exceeding 90 days or $100 in value."

The statute in the Lading case, as the statute in this case, contains no language unconditionally requiring the employee to accept the physician tendered him or relinquish the right of reimbursement altogether, and we construe the statute here under considera-

tion (Code Ann. Supp., § 114-501) to impose upon the employer the duty to furnish medical aid to an injured employee, and, *in the absence of any order by the State Board of Workmen's Compensation,* to vest in the injured employee the right and option to accept the physician tendered by the employer or select one of his own choice; yet if the employee voluntarily and in good faith calls a physician other than the one tendered him by the employer, the liability of the employer is limited as declared by the statute during the disability to a reasonable value for the "attention reasonably required" for a period "not exceeding ten weeks from date of the injury to effect a cure or give relief and . . in amount not to exceed $500.00." Even though the reasonable and just value of such medical services might be in excess of $500 and the disability extend more than 10 weeks, in the absence of an order from the State Board of Workmen's Compensation the employee can only recover within these limits when he exercised such option; and by exercising such option the employee assumes the responsibility for his own treatment and must bear the loss resulting from neglect or lack of skill therein. Bookman *v.* Lyle Culvert &c., 153 Minn. 479 (190 N. W. 984); Carmody *v.* St. Paul, 207 Minn. 419 (291 N. W. 895); Snyder *v.* Industrial Commission, 297 Ill. 175 (130 N. E. 517); Old Ben Coal Corp. *v.* Industrial Comm., 311 Ill. 35 (142 N. E. 507); O'Malley *v.* Mack International Motor Truck Corp., 225 Mo. App. 1 (31 S. W. 2d, 554); Neary *v.* Philadelphia Coal & Iron Co., supra.

The evidence is undisputed relative to the medical treatment. It affirmatively appears from the award of the hearing director of the State Board of Workmen's Compensation that the final or ultimate finding of such director, that the employer was not liable for the medical treatment of the employee, was controlled *solely* by an erroneous legal theory, and on appeal it was not error for the judge of the superior court to reverse such finding with directions.

In short, if the injured employee used his family doctor under the rules above stated at a reasonable cost within the statutory $500 limitation, he is not penalized for exercising this privilege of using his family doctor where there was no loss from lack of skill or neglect by such doctor.

The judgment of the superior court should be affirmed. I am authorized by Judge Parker to state that he concurs in this dissent.