## 33025.   ROYAL INDEMNITY COMPANY *et al. v.* BANNISTER.

DECIDED NOVEMBER 2, 1950.   REHEARING DENIED DECEMBER 15, 1950.

*Neely, Marshall & Greene, W. Neal Baird,* for plaintiffs in error.

*Harry E. Williams,* contra.

MacIntyre, P. J. Where, under the terms of the agreement, entered into on May 18, 1948, duly approved by the State Board of Workmen's Compensation on May 24, 1948, the employer, conceding that the injury arose out of and in the course of the employment on March 8, 1948, paid the employee compensation in accordance with the provisions of the statute for temporary total incapacity to work for the period from March 15, 1948 to April 26, 1948, a term of six weeks, the first seven days being excluded as provided by statute; and, the employee, on May 18, 1948, also signed a release, in final settlement and satisfaction of all claims for compensation, stating that the employee was able to work on April 26, 1948, the employee was entitled to apply to the board for a hearing and review of the agreement-award at any time within two years from May 24, 1948, the time at which the board was notified of the final payment of the claim; and the board was authorized to enter an award ordering the employer to continue the weekly payments for temporary total incapacity to work until there was a change in condition; provided there was sufficient evidence to authorize

the board to find that there had been a change in the employee's condition between the time of the agreement-award and the time of the hearing. Code, § 114-709; *Lumbermen's Mutual Casualty Co. v. Cook*, 69 *Ga. App.* 131 (25 S. E. 2d, 67); *Sears, Roebuck & Co. v. Griggs*, 48 *Ga. App.* 585 (173 S. E. 194), and cit.

To ascertain whether there was sufficient evidence to warrant the award of compensation upon the finding of the single director that the claimant "has grown steadily worse," the evidence must be considered to determine whether there has been a change in the claimant's physical condition since the agreement-award which is attributable to the injury sustained in the employment. It is stipulated in the agreement-award that the injury consisted of a "possible back sprain" and in the release that the claimant "was able to work on the 26th day of April 1948." The claimant testified that she cannot carry on now the occupation which she had at the time of the injury and that she has great difficulty in doing even her simple household duties; that she has grown worse since she signed the release; and that she has not been able to return to work since the accident although at the time she signed the release she believed that she would be able to do so. Her husband testified that, since the accident and the time she signed the release, her condition had grown worse, and that she had complained of pain more since that time. The claimant's son substantiated the husband's testimony. Dr. Earl B. Benson, the physician to whom the claimant was directed by the employer at the time of the accident, testified: "The first time when she was sent in from the MFM Company—at that time it appeared to be a back sprain. We gave her treatment on her back. It didn't seem to get no better when we seen her at home. The symptoms seemed to be her kidneys. We took specimens of her urine and that cleared up and she still complained of pain and we sent her to St. Joseph's clinic to a urologist. . . They didn't find anything and dismissed her. She didn't come back after that." Dr. Benson also testified that at the time he treated the claimant she complained of pain in "the flat side of the back," and that she had a mild curvature of the spine which she had probably had for years, but he did not find any traces of sciatica on the left side and that "if she was injured, it was inside." Dr. Calvin Sandison

testified that he had examined the claimant shortly before the hearing and she told him that she had always had a good back prior to the time of the accident; that she had sciatica down the left side of her back and leg and there were definite findings of tenderness over the third and fourth region of the lumbar spine and that he diagnosed the complaint as "a probable ruptured intervertebral disc." Dr. Sandison also stated that he was of the opinion that the pains which the claimant was suffering could have been caused by the strain on the claimant's back when she was upholstering the chairs on her job, and the back of a patient who has an intervertebral disc rupture will frequently be the only ailing part for as long as six months when other symptoms, such as the claimant had, will develop. While it is true that, in answer to a hypothetical question, Dr. Sandison stated, that if the claimant had been suffering from back pains, such as she was then suffering, for a number of years before she received the sprain to her back, it would be more reasonable to attribute the ruptured discs to earlier causes, there is no evidence in the record that she had so suffered prior to the accident. Dr. M. Haygood testified that he had treated the claimant prior to the time of the accident and after the accident, but the only evidence he gave of her complainting of pain in her back was when he saw her *after* the accident, and though he testified that he diagnosed no symptoms of an intervertebral rupture, he treated her for cystitis, a "low grade infection of the bladder." From this evidence the director was authorized to find that the accident which the claimant sustained during her employment at the MFM Company was the cause of the injury to her back; that there had been a change for the worse in the claimant's condition since she released the company from further liability for the injury, and that this change in condition was attributable to the injury. It follows that the superior court did not err in affirming the award of the board which granted compensation for temporary total incapacity to work.

The following cases upon which counsel for the employer and insurance carrier rely for support of their contention that the award of the board should be reversed are distinguishable upon their facts: *U. S. Fidelity & Guaranty Co.* v. *Brown*, 68 *Ga. App.* 706 (23 S. E. 2d, 443), *Woodruff* v. *American Mutual Lia-*

*bility Ins. Co.,* 67 *Ga. App.* 554 (21 S. E. 2d, 298), *American Mutual Liability Ins. Co.* v. *Harden,* 64 *Ga. App.* 593 (13 S. E. 2d, 685), *Hartford Accident & Indemnity Co.* v. *Carroll,* 75 *Ga. App.* 437 (43 S. E. 2d, 722), *Rourke* v. *Fidelity & Guaranty Co.,* 187 *Ga.* 636 (1 S. E. 2d, 728), *Liberty Mutual Ins. Co.* v. *Morgan,* 199 *Ga.* 179 (33 S. E. 2d, 336), and *Phinese* v. *Ocean Accident & Guaranty Corp.,* 81 *Ga. App.* 394 (58 S. E. 2d, 921). In the *Phinese* case the physician who testified that the claimant was suffering 50% disability could not testify that there had been a change in the claimant's condition since the time the claimant had entered into an agreement stipulating that he had a 15% permanent partial disability and the other evidence in the case was to the effect that there had not been a change in condition. The *Morgan* case did not involve any question of a change in condition. The contention in the *Rourke* case was that the original agreement-award was erroneous; and, even had there been a contention of change in condition, the time for a review upon that ground had long since expired. The evidence in the *Harden* case sustained with equal force the theory that the claimant had suffered a stroke of paralysis as it did the theory that the claimant had suffered an accidental injury; and, under such circumstances, the single director properly found that no accident had occurred as the burden was upon the claimant to establish the occurrence of an accidental injury. In the *Woodruff* case the claimant again did not carry the burden of proof and compensation was denied. The evidence was particularly strong that the claimant's husband had died of a rupturing of an aorta into the pericardial sac and it was mere conjecture that the injury which he sustained to his leg had any causal connection with his death. In the *Brown* case the question involved was which of two injuries had caused the claimant's loss of vision, one sustained during his employment with the defendant employer and the other sustained prior to such employment. In the *Carroll* case, while the physician testifying disagreed with the physicians who had testified in an earlier hearing on the question of whether the aggravation of the claimant's pre-existing osteo-arthritis had ceased, he was unable to say that there had been a change in condition and there was no other evidence of a change in condition which attributed the de-

850

fendant's condition to the accident which he had sustained in the employment.

As we have said, the superior court did not err in affirming the award of the board granting compensation for temporary total incapacity to work.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*