## 45553.   KNIGHT v. FULTON INDUSTRIES.

ARGUED SEPTEMBER 16, 1970—DECIDED MARCH 10, 1971—
REHEARING DENIED MARCH 31, 1971—CERT. APPLIED FOR.

*Albert P. Feldman,* for appellant.

*Smith, Cohen, Ringel, Kohler, Martin & Lowe, Williston C. White,* for appellee.

EVANS, Judge. Upon consideration of the motion for rehearing, a majority of this court voted to grant the motion, vacate the judgment of affirmance, and reverse the judgment.

It appears that the award of the State Board of Workmen's Compensation is premised upon an erroneous finding of fact. Among other things, the findings of fact by the board were: "His (Knight's) employment consisted of cutting leather straps and helping to install them on certain machinery of the employer. The record reveals that neither of the operations could be considered to be strenuous activity or of a nature to cause undue exertion on the part of the deceased. *We further find that the deceased mode of locomotion between the two floors on which he worked was by elevator.* The board further finds that ninety to ninety-five percent

of the claimant's work was of a sedentary nature." (Emphasis supplied.)

The evidence before the board by a fellow worker was uncontradicted to the effect that Clifford R. Knight, the employee, walked everywhere his fellow employee walked; that there were two modes of locomotion, an elevator between floors to go from the belt shop to the picker room, and a flight of stairs from the picker room to the opening room, and that Knight walked up and down these stairs at least four times on the day of and shortly before his death. He had a long standing history of coronary disease and enphysema and had been for some time receiving active medical treatment for these conditions. It appears from a reading of the evidence of the witness McCord that the board failed to credit the testimony of McCord as to the working conditions and distances involved. This testimony is somewhat vague and conflicting due to the witness's misunderstanding of the questions asked of him, but a study of this testimony discloses that Knight and McCord worked together in three separate locations, i.e., (1) the belt shop on the ground floor; (2) the picker shop located one floor up by elevator and approximately a city block from the elevator; and (3) the opening room down a flight of stairs from the picker room. (It cannot be ascertained from the testimony whether the belt shop and the opening room are on the same floor). The findings of fact of the board are completely erroneous "that the deceased mode of locomotion between the floors on which he worked was by elevator." (See Record, pp. 35, 36, 96, 97, 99, 102 and 120). Thus, the erroneous findings of fact to the effect that only an elevator was used for transportation between the two floors, and that Knight's employment was of a sedentary nature, and that his death took place following a short period of rest may well have influenced the board's finding against claimant. Be that as it may, where the findings of fact are not supported by the evidence, the award should be reversed. See *Code* § 114-707; *Southeastern Express Co. v. Edmondson,* 30 Ga. App. 697 (1) (119 SE 39); *Atlanta Transit System v. Harcourt,* 94 Ga. App. 503 (95 SE2d 41); *Ideal Mut. Ins. Co. v. Ray,* 92 Ga. App. 273, 276 (88 SE2d 428). The award must be supported by the findings of fact. The findings of fact must be based on evidence. See *Lathem v. Hartford Acc. &c. Co.,* 60 Ga.

App. 523, 527 (3 SE2d 916); *Woodruff v. American Mut. Liab. Ins. Co.*, 67 Ga. App. 554, 560 (21 SE2d 298); *U. S. Fidel. &c. Co. v. Brown*, 68 Ga. App. 706 (3) (23 SE2d 443). The case should be recommitted to the board for it to render a proper finding of fact on which to base its award.

*Judgment reversed. Bell, C. J., Pannell, Deen, Quillian and Whitman, JJ., concur. Jordan, P. J., Hall, P. J., and Eberhardt, J., dissent.*

HALL, Presiding Judge, dissenting. Under the mandate of our Supreme Court, this court has consistently affirmed awards to claimants in heart attack cases under the "any evidence" rule. *Thomas v. U. S. Cas. Co.*, 218 Ga. 493 (128 SE2d 749). The application of this neutral principle of law should be followed when the board finds for the employer as well as when it finds for the claimant.

The evidence shows that on the day of his death the employee's only work-related activity which could be considered strenuous was climbing and descending stairs. The medical evidence also showed that, to be a competent producing cause of his heart attack, this activity would have to have occurred within a very short time before the attack. The only evidence of what he was doing that day was the testimony of a co-worker—testimony which was unfortunately vague and conflicting. On direct examination, this witness gave the impression that deceased had descended the stairs about 30 minutes before his death. However, on cross examination and redirect (and in response to more specific and pointed questioning), he testified that deceased made that particular trip to the ground floor by elevator and that the last descent by stairs took place two or two and one-half hours previously. Specifically, he testified as follows: "Q. Now, do you know whether Mr. Knight went down those stairs that last time he went to the belt shop or whether he went to the elevator? A. He uses the elevator every time as well as I recall." (T-116). "Q. Now, how did he come to go into the belt shop? A. He came from the picker room, down to the elevator and down to the belt shop." (T-101). "Q. How long —what time did you all have lunch that day? A. We ate lunch just before 11:30, a little ahead of time, lunch time was 11:30. Q. And where did you all eat lunch? A. In the belt shop, sir. Q. Now, I believe

you testified you ate lunch in the belt shop, did you go up to the picker room? A. After lunch? Q. After lunch? A. Yes, sir. Q. How—now, how did you go up to the picker room? A. Well, elevator. Q. By elevator. A. Yes, sir. Q. Did he go up with you to the picker room? A. Mr. Knight? Q. Yes, sir. A. Yes, sir." (T-114-115). "Q. All right, now, when did the last trip take place in which Mr. Knight went either up or down those stairs, what time of day on the 25th of February? A. We worked in the opening room that morning and it had to be that morning. Q. It would have to be in the morning? A. Yes, sir. Q. Could you give me an estimate of what time in the morning? A. We came from over there just before lunch time. Q. Just before lunch time? A. Yes, sir. Q. All right, now, what did Mr. Knight do if anything at lunch time? A. He slept during lunch after he ate. Q. Ate lunch and slept? A. Yes. Q. How long did he sleep? A. Probably 20, 25 minutes. Q. Then after lunch did you or Mr. Knight go up and down any stairs? A. No, sir." (T-112, 113). "Q. Now, you came down to the belt room as I understand your testimony, Mr. McCord, immediately prior to the time Mr. Knight died, is that right? A. We came down right after that job, yes, sir. Q. All right, and about how long did you stay in the belt room with Mr. Knight before you left to go listen to the races? A. I would say 30, 45 minutes or longer; something like that." (T-119).

The above evidence shows that the last trip by stairs was prior to the 11:30 a.m. lunch; therefore, the period between the time of using the stairs and death at 2 p.m. was two and one-half hours. The trip made after lunch to the ground floor was by elevator.

The board found that "the deceased mode of locomotion between the two floors on which he worked was by elevator." The majority opinion holds that in making this finding the board completely ignored clear and undisputed evidence that the deceased had used the stairs several times that day.

It is true that this finding could be subject to more than one construction, e.g. that the deceased *always* used the elevator or that he used the elevator on the trip he made within the medically relevant time period. The first construction would be contrary to the evidence, but the second is supported by evidence, although conflicting.

The Supreme Court has recently held that "the findings of fact in the report of the Board of Workmen's Compensation are filed in order that the losing party may intelligently prepare his appeal, that 'legal precision and nicety in the report should not be insisted upon,' and if the report is subject to two constructions, one of which would render the award invalid, and one of which would with equal reason render it valid, it 'should be construed, after judgment, to be that which will make the judgment valid.' *Southeastern Exp. Co. v. Edmondson*, 30 Ga. App. 697, 700 (119 SE 39); *Maryland Cas. Corp. v. Mitchell*, 83 Ga. App. 99, 101 (62 SE2d 415); *Pacific Employers Ins. Co. v. West*, 97 Ga. App. 392, 396 (103 SE2d 130); *Lee v. General Accident Group*, 112 Ga. App. 197, 199 (144 SE2d 457); *Chattahoochee Camp School v. Cole*, 117 Ga. App. 505, 507 (161 SE2d 78)." *Gatrell v. Employers Mut. Liab. Ins. Co.*, 226 Ga. 688 (177 SE2d 77). This is merely another application of the "any evidence" rule.

The board was authorized to believe that version of the testimony which said that about 30 minutes before his death the deceased made his last trip from one floor to the other by elevator—that the last descent by stairs took place two or two and one-half hours previously, and to make findings in accordance with it. See *Travelers Ins. Co. v. Maddox*, 118 Ga. App. 596 (164 SE2d 850). This court should, in turn, adopt that construction of the findings which renders the award valid.

I am authorized to state that Presiding Judge Jordan and Judge Eberhardt concur in this dissent.